Erica C. Mirabella
MIRABELLA LAW, LLC
132 Boylston Street, 5th Floor
Boston, MA  02116
(617) 580-8270
(617) 583-1905 (fax)
erica@mirabellaLLC.com

*Counsel for Plaintiff*
[Additional Counsel listed on signature page]


## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

-------------------------------------------------------x

CASLEY VASS, individually, and on behalf of
all others similarly situated,

                                    :

                   Plaintiff,              **CLASS ACTION COMPLAINT**

                                      :

         -vs.-

                                      :

BLUE DIAMOND GROWERS,          **JURY TRIAL DEMANDED**

                   Defendant.     :

-------------------------------------------------------x


Plaintiff Casley Vass ("Plaintiff"), individually, and on behalf of similarly situated

persons, allege the following against Defendant Blue Diamond Growers ("Blue Diamond" or

"Defendant") as to their own acts upon personal knowledge, and as to all other matters upon

information and belief.

## PRELIMINARY STATEMENT

Blue Diamond, a well-known producer of almond products, deceived its customers into

believing that Blue Diamond products are natural and sweetened with the false and misleading

term "Evaporated Cane Juice" when, in fact, Blue Diamond products contain artificial

ingredients, synthetic additives and are sweetened with sugar and not the healthier sounding

"juice".  Blue Diamond violated, and continues to violate, federal and state laws specifically

prohibiting misbranding of packaged food products.

## I.    DEFINITIONS

1.      "Class Period" is September 11, 2010 to the date of notice to the class.

2.      "Purchased Product" is Blue Diamond's Almond Breeze Shelf Stable Chocolate Almond Milk that was purchased by Plaintiff during the Class Period. Pictures of the Purchased Product along with specific descriptions of the labels are included within Section VIII infra.

3.      "Substantially Similar Products" are the Blue Diamond almond milk products listed in Paragraph 4 infra.  Each of these listed products: (i) make the same label misrepresentations, as described herein, as the Purchased Product and (ii) violate the same food labeling regulations of Massachusetts, as described herein.

4.       Upon information and belief, these Substantially Similar Products are the Blue Diamond almond milk products, sold during the class period, listed below.  Plaintiff reserves the right to supplement this list if evidence is adduced during discovery to show that other Blue Diamond almond milk products had labels that violate the same provisions of Massachusetts law and have the same label misrepresentations as the Purchased Product:

>    (A) Blue Diamond Growers' almond milk products labeled with the ingredient "evaporated cane juice" include:

- Almond Breeze Shelf Stable Original Almond Milk;
- Almond Breeze Shelf Stable Vanilla Almond Milk;
- Almond Breeze Shelf Stable Chocolate Almond Milk;
- Almond Breeze Shelf Stable Almond Coconut Original;
- Almond Breeze Refrigerated Original Almond Milk;
- Almond Breeze Refrigerated Vanilla Almond Milk;
- Almond Breeze Refrigerated Chocolate Almond Milk;
- Almond Breeze Shelf Stable Almond Coconut Vanilla Almond Milk;
- Almond Breeze Refrigerated Almond Coconut Original Almond Milk;
- Almond Breeze Refrigerated Original Almond Milk, 96 ounce container; and
- Almond Breeze Shelf Stable Original Almond Milk, 11 ounce single serve.

>    (B) Blue Diamond Growers' almond milk products labeled "All Natural" despite containing artificial or synthetic ingredients include:

-     Almond Breeze Shelf Stable Original Almond Milk;
-     Almond Breeze Shelf Stable Vanilla Almond Milk;
-     Almond Breeze Shelf Stable Chocolate Almond Milk;
-     Almond Breeze Shelf Stable Almond Coconut Original;
-     Almond Breeze Refrigerated Original Almond Milk;
-     Almond Breeze Refrigerated Vanilla Almond Milk;
-     Almond Breeze Refrigerated Chocolate Almond Milk;
-     Almond Breeze Shelf Stable Almond Coconut Vanilla Almond Milk;
-     Almond Breeze Refrigerated Almond Coconut Original Almond Milk;
-     Almond Breeze Refrigerated Original Almond Milk, 96 ounce container;
-     Almond Breeze Shelf Stable Original Almond Milk, 11 ounce single serve;
-     Almond Breeze Original Unsweetened Refrigerated Almond Milk;
-     Almond Breeze Shelf Stable Original Unsweetened Almond Milk;
-     Almond Breeze Refrigerated Almond Coconut Original Unsweetened Almond Milk;
-     Almond Breeze Shelf Stable Almond Coconut Vanilla Unsweetened Almond; Milk;
-     Almond Breeze Vanilla Unsweetened Refrigerated Almond Milk;
-     Almond Breeze Shelf Stable Chocolate Unsweetened Almond Milk; and
-     Almond Breeze Shelf Stable Vanilla Unsweetened Almond Milk.

## II.    SUMMARY OF THE CASE

5.    Plaintiff's case has two facets.  The first is the unlawful sale and misbranding part. This aspect of the Plaintiff's case is brought pursuant to 105 CMR 520.116(A)(1), (C) which makes it illegal to sell, advertise, distribute for sale, traffic, trade, transportation, display for sale, offer for sale, deliver for sale, intend to sell any food products as "natural," or with words of similar meaning, unless such food complies with the State of Massachusetts' definition of natural food.  Doing so results in the food being misbranded.  105 CMR 520.116(C); ALM GL ch. 94 § 187.   This facet of Plaintiff's case is also brought pursuant to Massachusetts ALM GL ch. 94 §§ 187 and 190 which prohibit the manufacture, sale, delivery or offer of delivery of misbranded food, including food whose label is false and misleading in any particular or which fails to disclose all ingredients by their common or usual name.  Plaintiff alleges that Defendant packages and labels the Purchased Product and Substantially Similarly Products in violation of the Massachusetts statutes set forth above. Indeed, the sale, purchase or possession of misbranded food is a criminal act in Massachusetts and the FDA even threatens food companies

with seizure of misbranded products. This "misbranding" and unlawful sale gives rise to the first aspect of Plaintiff's case under Massachusetts law.

6.     The second aspect to this case is the deceptive part. Plaintiff alleges that the labels on the Purchased Product and the Substantially Similar Products – aside from being unlawful under Massachusetts law – are also misleading, deceptive, unfair and fraudulent. Plaintiff describes these labels and the ways in which they are misleading. Plaintiff alleges that they reviewed the labels on the Purchased Product, reasonably relied in substantial part on the labels, and were thereby deceived, in deciding to purchase these products. Moreover, the very fact that Defendant sold such Purchased Product and Substantially Similar Products and did not disclose this fact to consumers is a deceptive act in and of itself. Plaintiff would not have purchased a product that is illegal to sell.

7.     Plaintiff did not know, and had no reason to know, that Defendant's Purchased Product was misbranded under Massachusetts law and bore food labeling claims that failed to meet the requirements to make those food labeling claims. Similarly, Plaintiff did not know, and had no reason to know, that the labels of Defendant's Purchased Product were false and misleading.

8.     In order to remedy the harm arising from Defendant's illegal conduct, which has resulted in unjust profits, Plaintiff brings this action on behalf of the following Class: "All persons in Massachusetts who, from September 11, 2010, until the date of notice, purchased almond milk products manufactured, distributed and/or sold by Blue Diamond Growers containing the label statements 'evaporated cane juice' and/or 'All Natural.'" (the "Class").

## III.    BACKGROUND

8.     Identical Massachusetts and federal laws regulate the content of labels on packaged food. The requirements FDCA were adopted by Massachusetts. Under both Massachusetts law and FDCA section 403(a), food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. 21 U.S.C. § 343(a) Massachusetts ALM GL ch. 94 § 187.

9.      Under the FDCA, the term "false" has its usual meaning of "untruthful," while the term "misleading" is a term of art.  Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading.  If any one representation in the labeling is misleading, the entire food is misbranded, nor can any other statement in the labeling cure a misleading statement.

10.      Under Massachusetts law, a food product that is "misbranded" is not merchantable, has no economic value and is legally worthless.  Plaintiff and members of the Class who purchased these products paid an unwarranted premium for these products.

11.      Blue Diamond's websites, www.bluediamond.com and www.almondbreeze.com, are incorporated into the label for each of Defendant's product that bears the web address www.bluediamond.com and/or www.almondbreeze.com. The Purchased Product and/or the Substantially Similar Products bear this website. According to the FDA and as a matter of law, the Blue Diamond websites and all linked websites constitute the labeling of any product bearing this web address.

12.      Plaintiff bring this action under Massachusetts law, which is identical to federal law, for a number of the Defendant's food labeling practices which are both (i) unlawful and (ii) deceptive and misleading to consumers.  These include:

a.      Representing food products to be "all natural," when they contain artificial ingredients and synthetic additives;

b.      Making unlawful and misleading "evaporated cane juice" claims;

c.      Making unlawful health claims on its website regarding the Purchased Product and the Substantially Similar Products.

## IV.      PARTIES

13.      Plaintiff Casley Vass is a resident of Boston, Massachusetts who purchased the Blue Diamond Purchased Product in Massachusetts within the four years preceding the filing of this action.

14.      Defendant Blue Diamond Growers is a California corporation with its principal

place of business in Sacramento, California.  Defendant can be served pursuant to Rule 5 of the

Federal Rules of Civil Procedure by service upon its counsel of record.

15.     Defendant is a leading producer of retail food products, including the Purchased

Product and Substantially Similar Products at issue herein.  Defendant sells its food products to

consumers through grocery and other retail stores throughout Massachusetts.

16.     Massachusetts law applies to all claims set forth in this Complaint because

Plaintiff lives in Massachusetts and purchased the Purchased Product there.  Also, the Defendant

sold its products through Massachusetts and availed itself of business opportunities in this state.

All of the misconduct alleged herein was contrived in, implemented in, and has a shared nexus

with Massachusetts.  The formulation and execution of the unlawful practices alleged herein,

occurred in, or emanated from Massachusetts.

17.     Accordingly, Massachusetts has significant contacts and/or a significant

aggregation of contacts with the claims asserted by Plaintiff and all Class members.

## V.     JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action under 28 U.S.C. § 1332(d) because

this is a class action in which: (1) the matter in controversy exceeds the sum or value of

$5,000,000, exclusive of interest and costs; (2) members of the Plaintiff's class are citizens of a

State different from a defendant; and (3) the number of members of all proposed Plaintiff classes

in the aggregate is greater than 100.

19.     The Court has personal jurisdiction over Defendant because a substantial portion

of the wrongdoing alleged herein occurred in Massachusetts.  Defendant also has sufficient

minimum contacts with Massachusetts and has otherwise intentionally availed itself of the

markets in Massachusetts through the promotion, marketing, and sale of products sufficient to

render the exercise of jurisdiction by this Court permissible under traditional notions of fair play

and substantial justice.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (3)

because a substantial part of the events or omissions giving rise to these claims occurred in this

District, a substantial part of the property that is the subject of this action is situated in this

District, and Defendant are subject to the Court's personal jurisdiction with respect to this action.

## VI.    FACTUAL ALLEGATIONS

### A.    Identical Massachusetts and Federal Laws Regulate Food Labeling

21.    Food manufacturers are required to comply with identical state and federal laws

and regulations that govern the labeling of food products.  First and foremost among these is the

FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

22.    Pursuant to Massachusetts law, Massachusetts has expressly adopted the federal

labeling requirements as its own.

23.    Massachusetts requires that all packaged food be labeled in compliance with

applicable law including all labeling requirements contained in 21 C.F.R. Part 101 - Food

Labeling. 105 CMR 590.001; 105 CMR 590.004(B); Massachusetts Food Code § 3-201.11.

Massachusetts requires this "to safeguard public health and provide to consumers food that is

safe, unadulterated, and honestly presented." 105 CMR 590.001; 105 CMR 590.002;

Massachusetts Food Code § 3-101.11. Massachusetts mandates that "[f]ood shall be safe,

unadulterated, and, as specified under [FC] § 3-601.12, honestly presented." Massachusetts Food

Code § 3-101.11; 105 CMR 590.001. Massachusetts Food Code § 3-601.12 provides that "[f]ood

shall be offered for human consumption in a way that does not mislead or misinform the

consumer. Massachusetts Food Code § 3-601.12; 105 CMR 590.001.

24.    In addition to its blanket adoption of federal labeling requirements, Massachusetts

has also enacted a number of laws and regulations that parallel federal food laws and regulations

and impose identical requirements.  *See*, for example, Massachusetts ALM GL ch. 94 § 187

(food is misbranded if its label 1) is false and misleading in any particular or 2) fails to disclose

ingredients by their common and usual name or 3) if words, statements and other information

required by Massachusetts law are either missing or not sufficiently conspicuous).

### B.    FDA Enforcement History

25.     In October 2009, the FDA issued a Guidance for Industry: Letter regarding Point Of Purchase Food Labeling and the March 3, 2010 FDA issued "Open Letter to Industry from [FDA Commissioner] Dr. Hamburg") to inform the food industry of its concerns and to place the industry on notice that food labeling compliance was an area of enforcement priority. Additionally, the FDA has sent warning letters to the industry, including many of Defendant's peer food manufacturers, for the same types of misbranded labels and deceptive labeling claims described herein.

26.     Defendant did see, or should have seen, these warning letters.  Defendant did not change the labels in response to the warning letters sent to other companies.

**VII.     OVERVIEW OF APPLICABLE MASSACHUSETTS LAW VIOLATIONS**

**A.   "All Natural" Claims**

27.     The Purchased Product is misbranded with an unlawful "all natural" label.

28.     Defendant's use of "all natural" claims on products containing unnatural artificial ingredients such as synthetic additives violates Massachusetts law, Massachusetts ALM GL ch. 94 § 187 because such label claims are "false and misleading."  Massachusetts ALM GL ch. 94 § 187 is identical to the prohibition in 21 U.S.C. § 343(a) against labeling that is "false or misleading in any particular."

29.     The FDA has repeatedly stated its policy to restrict the use of the term "natural" in connection with artificial ingredients and synthetic substances.

30.     The FDA has also repeatedly affirmed its policy regarding the use of the term "natural" as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food.   See 58 FR 2302, 2407, January 6, 1993.

31.     The FDA has sent out numerous warning letters concerning this issue.  Defendant is aware of these FDA warning letters.

32.     Defendant has nonetheless unlawfully labeled food products, both the Purchased Product and Substantially Similar Products, as being "all natural" when they actually contain

artificial ingredients and synthetic additives.

33.     Such false and misleading labeling claims also violate various provisions of the Massachusetts Food Code.

34.     Pursuant to 105 CMR 520.116(A)(1), (C), it is illegal to sell, advertise, distribute for sale, traffic, trade, transportation, display for sale, offer for sale, deliver for sale, intend to sell any food products as "natural," or with words of similar meaning, unless such food complies with the State off Massachusetts definition of natural food.  Doing so results in the food being misbranded.  105 CMR 520.116(C); ALM GL ch. 94 § 187.  Pursuant to 105 CMR 520.116(A)(2), "'Natural food' means food which in its processing has not been treated with preservatives, antibiotics, synthetic additives, artificial flavoring, artificial coloring, or has been processed in such a manner so that it become significantly less nutritive.  Natural foods may only be processed by extracting, purifying, heating, fermenting, concentrating, dehydrating, cooling, or freezing."

35.     By affirmatively stating that Blue Diamond almond milk products were "all natural," Defendant violated 105 CMR 520.116 by falsely representing Blue Diamond almond milk products as natural when they failed to meet Massachusetts' requirements for doing so.

36.     A reasonable consumer would expect that when Defendant labels its products as "all natural," the products' ingredients are "natural" as defined by the State of Massachusetts and the federal government and its agencies.  A reasonable consumer would also expect that when Defendant labels its products as "all natural" the products' ingredients are "natural" under the common use of that word.  A reasonable consumer would understand that such "all natural" products do not contain synthetic, artificial, or excessively processed ingredients.

37.     Consumers are thus misled into purchasing Defendant's products with synthetic additives and unnatural artificial ingredients that are not "all natural" as falsely represented on its labeling.

38.     Defendant's products in this respect are both unlawful (being misbranded under Massachusetts law) and misleading and deceptive.

B.      **"Evaporated Cane Juice" Claims.**

39.      The Purchased Product is misbranded with an unlawful "evaporated cane juice" label.

40.      Defendant's use of "evaporated cane juice" claims on products when the ingredient is not "juice" but was actually sugar violate Massachusetts law (Massachusetts ALM GL ch. 94 § 187) because such label claims are "false and misleading."

41.      **"Evaporated cane juice" is sucrose.**   Under FDA regulations and Massachusetts law, the common or usual name for sucrose is "sugar," not "juice."  Defendant's sole motivation for labeling the sugar in its almond milk products as "evaporated cane juice" is to increase sales by deceiving consumers into believing that they are purchasing a healthier product.

42.      In its guidance for industry and warning letters to manufacturers, the FDA has repeatedly stated its policy of restricting the ingredient names listed on product labels to their common or usual name, as provided in 21 C.F.R. § 101.4(a)(1).

43.      An ingredient's common or usual name is the name established by common usage or regulation, as provided in 21 C.F.R. § 102.5(d).

44.      The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of the other food that is not reasonably encompassed within the same name," as provided in 21 C.F.R. § 102.5(a).

45.      The FDA has issued a number of warning letters and policy statements that expressly object to the use of the term "evaporated cane juice" as being false and misleading and prohibited by labeling regulations. Defendant knew or should have known about these warning letters and policy statements.

46.      In October 2009, the FDA issued Guidance for Industry concerning "evaporated cane juice" claims stating:

>       -     "…the term "evaporated cane juice" has started to appear as an ingredient on food labels, most commonly to declare the presence of sweeteners derived from sugar cane syrup. However, FDA's current

policy is that sweeteners derived from sugar cane syrup should not be declared as "evaporated cane juice" because that term falsely suggests that the sweeteners are juice…

- "Juice" is defined by 21 CFR 120.1(a) as "the aqueous liquid expressed or extracted from one or more fruits or vegetables, purees of the edible portions of one or more fruits or vegetables, or any concentrates of such liquid or puree." …

- "As provided in 21 CFR 101.4(a)(1), "Ingredients required to be declared on the label or labeling of a food . . . shall be listed by common or usual name . . . ." The common or usual name for an ingredient is the name established by common usage or by regulation (21 CFR 102.5(d)). The common or usual name must accurately describe the basic nature of the food or its characterizing properties or ingredients, and may not be "confusingly similar to the name of any other food that is not reasonably encompassed within the same name" (21 CFR 102.5(a))…

- "Sugar cane products with common or usual names defined by regulation are sugar (21 CFR 101.4(b)(20)) and cane sirup (alternatively spelled "syrup") (21 CFR 168.130). Other sugar cane products have common or usual names established by common usage (e.g., molasses, raw sugar, brown sugar, turbinado sugar, muscovado sugar, and demerara sugar)…

- "The intent of this draft guidance is to advise the regulated industry of FDA's view that the term "evaporated cane juice" is not the common or usual name of any type of sweetener, including dried cane syrup. Because cane syrup has a standard of identity defined by regulation in 21 CFR 168.130, the common or usual name for the solid or dried form of cane syrup is "dried cane syrup."…

- "Sweeteners derived from sugar cane syrup should not be listed in the ingredient declaration by names which suggest that the ingredients are juice, such as "evaporated cane juice." FDA considers such representations to be false and misleading under section 403(a)(1) of the Act (21 U.S.C. 343(a)(1)) because they fail to reveal the basic nature of the food and its characterizing properties (i.e., that the ingredients are sugars or syrups) as required by 21 CFR 102.5. Furthermore, sweeteners derived from sugar cane syrup are not juice and should not be included in the percentage juice declaration on the labels of beverages that are represented to contain fruit or vegetable juice (see 21 CFR 101.30).

http://www.fda.gov/Food/GuidanceComplianceRegulatoryInformation/GuidanceDocumentFood

LabelingNutrition/ucm181491.htm

47.     By violating the federal provisions detailed above, Defendant also violated the

provisions of Massachusetts law set forth in Paragraphs 23 and 40 above.

48.     By listing sugar as "evaporated cane juice" in its misbranded products' ingredient

lists, Defendant also violated 105 CMR 520.104 which mandates that "[i]ngredients required by M.G.L. c. 94, § 187, paragraph 11 under food, to be declared on the label of a food, except those exempted by 105 CMR 520.200 shall be listed by common or usual name in descending order of predominance by weight on either the principal display panel or the information panel."

49.    Defendant also made the same illegal claims on its websites and advertising in violation of federal and Massachusetts law.

50.    Consumers are thus misled into purchasing Defendant's products with false and misleading ingredient names, which do not describe the basic nature of the food or its characterizing properties or ingredients and which are "confusingly similar to the name of" another food, i.e., juice, "…not reasonably encompassed within the same name," as provided in 21 C.F.R. § 102.5(a).

## VIII.   THE PURCHASED PRODUCT (1) UNLAWFULLY VIOLATES MASSACHUSETTS LAW AND (2) IS MISLEADING AND DECEPTIVE

51.    There is one (1) Purchased Product, Blue Diamond's Almond Breeze Shelf Stable Chocolate Almond Milk. Plaintiff purchased the Purchased Product during the Class Period.

52.    The Purchased Product has a label that violates Massachusetts law and is therefore misbranded and may not be sold or purchased.

53.    The label (front, back and side) of the package of the Purchased Product purchased by Plaintiff is as follows:







54.     The following unlawful and misleading language appears on the label:

"All Natural"

* * *

"Almond Breeze® Almondmilk is an all natural, great tasting NON-DAIRY

BEVERAGE."

* * *

"All Natural with added Vitamins and Minerals."

55.     Further, the following unlawful and misleading language appears in the label's list

of ingredients:

"INGREDIENTS": ALMONDMILK (FILTERED WATER, ALMONDS), EVAPORATED
CANE JUICE, COCOA (DUTCH PROCESS), CALCIUM CARBONATE, SEA SALT,
POTASSIUM CITRATE, CARRAGEENAN, NATURAL FLAVORS, SUNFLOWER
LECITHIN, VITAMIN A PALMITATE, VITAMIN D-2 AND D-ALPHA-TOCOPHERAL
(NATURAL VITAMIN E).

56.     Plaintiff reasonably relied on these label representations in paragraphs 54 and 55

and based and justified his decision to purchase the product, in substantial part, on these label misrepresentations.

57.    The Purchased Product is unlawful, misbranded and violates Massachusetts law, including Massachusetts ALM GL ch. 94 § 187 and 105 CMR 520.116, as well as the guidance, regulations and statutes listed in Section VII (A) supra because the label uses the phrase "all natural" even though this product contains the following artificial ingredients: cocoa (Dutch process), potassium citrate, Vitamin A Palmitate, Vitamin D-2 and Vitamin D-Alpha-Tocopherol. This product is also misleading and deceptive because the label uses the phrases "[a]ll natural" on food that contains unnatural artificial ingredients and synthetic additives and, therefore, is not truly "all natural." Defendant also made those same unlawful representations concerning this product on its website.

58.    The Purchased Product is unlawful, misbranded, misleading, deceptive and violates the provisions of Massachusetts law set forth in Paragraph 48 because it lists "EVAPORATED CANE JUICE" as an ingredient, when such is not a "juice," but rather, in ordinary and commonly understood terms "sugar." "Evaporated cane juice" is not the common or usual name of the ingredient sugar and the common or usual name sugar should have been used on the label in the product's ingredient list as required by law. Defendant also made unlawful representations concerning this ingredient on its website.

## IX.    DEFENDANT VIOLATED MASSACHUSETTS LAW BY MANUFACTURING, ADVERTISING, DISTRIBUTING AND SELLING MISBRANDED FOOD

59.    Defendant has violated Massachusetts 105 CMR 520.116 which makes it unlawful to disseminate false or misleading food advertisements about the naturalness of a food product including false "all natural" statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product.

60.    Defendant violated Massachusetts ALM GL ch. 94 § 187 because its product

labeling is false and misleading in one or more ways.

61.      Defendant violated Massachusetts ALM GL ch. 94 § 187 because its product labeling failed to state the common or usual names of ingredients.

62.      Defendant violated including Massachusetts ALM GL ch. 94 § 190 which makes it unlawful for any person to manufacture, sell, deliver, or offer for sale any food that is misbranded.

63.      Defendant violated the standards set by 21 C.F.R. § 101.4(a)(1), 21 C.F.R. § 102.5(a), 21 C.F.R. § 102.5(d), 21 C.F.R. § 120.1(a), 21 U.S.C. §343, and 21 C.F.R. § 101.30.

## X.      PLAINTIFF BOUGHT THE PURCHASED PRODUCTS

64.      Plaintiff cares about the nutritional content of food and seeks to maintain a healthy diet.

65.      Plaintiff read and reasonably relied on Defendant's labeling as described herein and based and justified the decision to purchase Defendant's product, in substantial part, on the label.

66.      At point of sale, Plaintiff did not know, and had no reason to know, that the Purchased Product was unlawful and misbranded as set forth herein, and would not have bought the product had they known the truth about it composition and ingredients and that the product was not merchantable and illegal to sell.

67.      After Plaintiff learned that Defendant's Purchased Product was falsely labeled, they stopped purchasing it.

68.      As a result of Defendant's unlawful misrepresentations, Plaintiff and thousands of others in Massachusetts purchased the Purchased Product and the Substantially Similar Products at issue.

69.      A reasonable person would also attach importance to whether Defendant's products are "misbranded" and whether they were merchantable, *i.e.*, legally salable and to Defendant's representations about these issues in determining whether to purchase the products at issue.

70.     Plaintiff' purchases of the Purchased Product damaged Plaintiff because misbranded products cannot be legally sold, have no economic value, and are legally worthless.

## XI.     SUBSTANTIALLY SIMILAR PRODUCT CLAIMS

71.     Products which have the same claims and share the same label representations and Massachusetts law violations as the Purchased Product described herein are set forth in Paragraph 4.

72.     Defendant made the same false labeling claims on these products as on the Purchased Product.  Such false statements and omissions violate federal and Massachusetts law and render these products illegally misbranded.

73.     These products cannot be lawfully manufactured, distributed, or sold to consumers.

74.     The Food, Drug & Cosmetic Act ("FDCA") and regulations promulgated thereunder bar food manufacturers and distributors like Defendant from selling misbranded and illegal products that contain labels that fail to accurately disclose the nature of their contents.

75.     Under both federal and Massachusetts law it is illegal to manufacture, deliver or sell misbranded food. See 21 U.S.C. § 331; Massachusetts ALM GL ch. 94 § 190.

76.     Because the manufacture and sale of Blue Diamond products violates the food labeling laws of Massachusetts, the actions of Defendant also constitute predicate acts under consumer protection laws of Massachusetts, including, Massachusetts ALM GL ch. 93A *et seq*.

## FACTS RELEVANT TO ALL CLAIMS

### Blue Diamond products are misbranded and illegal

77.     All containers of Blue Diamond almond milk listed in this Class Action Complaint are misbranded and illegal.

78.     Plaintiff Casley Vass purchased Blue Diamond Purchased Product in Boston, Massachusetts within the past four years.  In particular, he purchased Blue Diamond for himself and his children, believing that the product did not contain any unnatural ingredients or added sugar, and unaware that Blue Diamond contained such ingredients.  However, he stopped

purchasing Blue Diamond almond milk for himself and his children when he learned that it contains artificial ingredients and added sugar.

79.     All containers of the Blue Diamond products listed Paragraph 4(A) above list "evaporated cane juice" as an ingredient.

80.     All containers of the Blue Diamond products listed Paragraph 4(B) above falsely state the almond milk they contain is "all natural."

81.     Plaintiff' purchases of Blue Diamond almond milk in Massachusetts included containers that: 1) included the unlawful  statement that Blue Diamond almond milk was "all natural;" and 2) represented that "evaporated cane juice" was an ingredient and failed to disclose the product contained sugar as an ingredient.

82.     These statements are false, misleading and illegal.

83.     Violations of federal labeling requirements also result in violations of 105 CMR 590.001; 105 CMR 590.004(B); Massachusetts Food Code § 3-201.11, which mandate that packaged food comply with all applicable laws.

84.     Defendant has also violated 21 C.F.R. § 1.21 by, *inter alia*, failing to reveal material facts on the labels of Blue Diamond containers.

85.     Defendant has violated the requirements of Massachusetts ALM GL ch. 94 § 187; ALM GL ch. 94 § 190; 105 CMR 590.001; 105 CMR 590.002; 105 CMR 590.004(B); 105 CMR 520.104; 105 CMR 520.115; 105 CMR 520.116; Massachusetts Food Code § 3-101.11; Massachusetts Food Code § 3-201.11; and Massachusetts Food Code § 3-601.12.

86.     Defendant has violated Massachusetts ALM GL ch. 94 § 187 and ALM GL ch. 94 § 190, which make it unlawful to manufacture, sell, deliver, or offer to deliver any misbranded food.

87.     Based upon the facts set forth in this Complaint, Defendant has violated Massachusetts ALM GL ch. 94, §§ 187, 190; 105 CMR 520.104 and 105 CMR 520.115.

88.     Based upon the facts set forth in this Complaint Defendant has violated Massachusetts ALM GL ch. 94 §§ 187, 190; 105 CMR 590.001, Massachusetts Food Code §§ 3-101.11; 3-601.12.

89.     Defendant has violated Massachusetts 105 CMR 520.116, which makes it unlawful to falsely represent food as natural when if it fails to meet Massachusetts' requirements for doing so.

90.     By affirmatively stating that Blue Diamond almond milk products were "all natural," Defendant violated 105 CMR 520.116 by falsely representing Blue Diamond products as natural when it failed to meet Massachusetts' requirements for doing so.

91.     Significantly, under 21 U.S.C. § 333(a)(1) and the food labeling laws of Massachusetts, Defendant's violations of the FDCA and the food labeling laws of Massachusetts (including all of the aforementioned provisions) are strict liability offenses for which no showing of intent to deceive or defraud is required.

92.     Under both the FDCA and the food labeling laws of Massachusetts, it is a strict liability offense to, *inter alia*, manufacture, sell, deliver, or offer to deliver any food that is misbranded.

93.     By manufacturing and selling misbranded products, Defendant has committed a predicate unlawful act, regardless of any misrepresentation or reliance thereon.

**Purchasers of Misbranded Products Have Been Injured**

94.     Had Plaintiff known that the Blue Diamond almond milk product he purchased was misbranded, Plaintiff would not have purchased them.

95.     Because Blue Diamond products are illegal and misbranded as described in this Complaint, they are economically worthless.

96.     Because Blue Diamond products are illegal and misbranded, they cannot be lawfully resold and are not merchantable.

97.     Plaintiff paid money for misbranded Blue Diamond products that were worth zero.

98.     Plaintiff could have purchased cheaper alternative products that were not illegal, misbranded, or worthless.

99.     Plaintiff paid an unwarranted premium for the Blue Diamond almond milk products he purchased over cheaper alternative products that were not illegal, misbranded, or worthless.

100.    Plaintiff relied on the labels of the Blue Diamond almond milk products he purchased to his detriment.

101.    Plaintiff's reliance was reasonable.

102.     A reasonable consumer would have been misled by the Defendant's actions.

103.    As a result of Defendant's unlawful misrepresentations, Plaintiff and millions of others in Massachusetts and throughout the United States purchased misbranded Blue Diamond almond milk products.

104.    Plaintiff and millions of others in Massachusetts and throughout the United States who purchased misbranded Blue Diamond almond milk products were injured as a result of Defendant's actions.

105.    Plaintiff and other purchasers of misbranded Blue Diamond almond milk products paid money for products that were worth zero.

106.    Plaintiff and other purchasers of misbranded Blue Diamond almond milk products paid money for products that were of a lesser value than represented by Defendant.

107.    Pursuant to Massachusetts ALM GL ch. 93A, on September 5, 2014, a written demand for relief, identifying the Plaintiff and the Class and reasonably describing the unfair or deceptive acts or practices relied upon and the injury suffered by Plaintiff and the Class, was mailed and delivered to each Defendant.

## CLASS ACTION ALLEGATIONS

108.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class (the "Class"):

All persons in Massachusetts who, from September 11, 2010, until the date of

notice, purchased almond milk products manufactured, distributed and/or sold by Blue Diamond Growers containing the label statements 'evaporated cane juice' and/or 'All Natural.' (the "Class").[1]

109.    Plaintiff seeks to represent the members of the Class who purchased misbranded Blue Diamond almond milk products in Massachusetts.

110.    The following persons are expressly excluded from the Class: (1) Defendant and their subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

111.    This action can be maintained as a class action because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

112.    **Numerosity**:  Based upon Defendant's publicly available sales data with respect to Blue Diamond almond milk products, it is estimated that the number of Class members is potentially in the millions, and that joinder of all Class members is impracticable.

113.    **Common Questions Predominate**:  This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members.  Thus, proof of a common set of facts will establish the right of each Class member to recover.  Questions of law and fact common to each Class member include, for example:

    a.    Whether Defendant engaged in unfair, unlawful or deceptive business practices by failing to properly package and label Blue Diamond almond milk products sold to consumers;

    b.    Whether Defendant failed to use the common and usual name for the sugar it used as an ingredient in its Blue Diamond almond milk products

    c.    Whether Defendant unlawfully sold misbranded food products in violation of the FDCA and the food labeling laws of Massachusetts;

    d.    Whether Defendant breached express or implied warranties;

---

[1] The list of almond milk products that make up the class definition are in Paragraph (4.) at (4.)(A.) and (4.)(B.)

e.      Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

f.      Whether Defendant's unlawful, unfair and deceptive practices harmed Plaintiff and the Class; and

g.      Whether Defendant were unjustly enriched by their deceptive practices.

114.    **Typicality**:  Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendant's Purchased Products during the Class Period.  Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.

115.    **Adequacy**:  Plaintiff will fairly and adequately protect the interests of the Class.  Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent Plaintiff's interests and those of the members of the Class.  Plaintiff and Plaintiff's counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiff and Plaintiff's counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

116.    **Superiority**:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they are not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would create.

117.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive or equitable relief with respect to the Class as a whole.

118.     The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

119.     Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

120.     There are no unique defenses which may be asserted against Plaintiff individually, as distinguished from the Class.  The claims of Plaintiff are the same as those of the Class.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION
### (Violation of Massachusetts ALM GL ch. 94 §§ 187 and 190 and 105 CMR 520.116)

121.     Plaintiff repeats and re-alleges each of the above allegations as if fully set forth herein.

122.     All containers of Blue Diamond Almond Breeze Almond Milk listed in Paragraphs 3, 4 and 86 are misbranded.

123.     Massachusetts ALM GL ch. 94 § 187 provides, *inter alia*, that: "Food shall be deemed to be misbranded:  1. If its labeling is false or misleading in any particular . . . .  If its container is so made, formed, colored or filled as to be misleading . . . If any word, statement or other information required by or under authority of this chapter to appear on the label or labeling is not prominently placed thereon with such conspicuousness, as compared with other words, statements, designs, or devices, in the labeling, and in such terms as to render it likely to be read

and understood by the ordinary individual under customary conditions of purchase and use [or] .
. . . unless its label bears … in case it is fabricated from two or more ingredients, the common or
usual name of each such ingredient."

124.    All labeling of the containers of Blue Diamond products referenced in this
Complaint is false and misleading.

125.    All containers of Blue Diamond products referenced in this Complaint do not
have words, statements or other information required under the FDCA and the Massachusetts
labeling laws.

126.    The containers of Blue Diamond products referenced in Paragraph 4. (A) in this
Complaint fail to use the common or usual name for the ingredient sugar and instead use the
false and misleading term "evaporated cane juice."

127.    All containers of Blue Diamond products referenced in this Complaint above bear
an "all natural" labeling claim but contain artificial ingredients and synthetic additives.

128.    Massachusetts ALM GL ch. 94 § 190 bars the manufacture, sale, delivery or offer
of delivery of misbranded food.

129.    Pursuant to 105 CMR 520.116(A)(1), (C) it is illegal to sell, advertise, distribute
for sale, traffic, trade, transportation, display for sale, offer for sale, deliver for sale, intend to sell
any food products as "natural," or with words of similar meaning, unless such food complies
with the State off Massachusetts definition of natural food.  Doing so results in the food being
misbranded. 105 CMR 520.116(C); ALM GL ch. 94 § 187.

130.    By affirmatively stating that Blue Diamond products were "all natural" despite
the fact that they contained artificial ingredients and synthetic additives, Defendant violated 105
CMR 520.116 by falsely representing Blue Diamond as natural when it failed to meet
Massachusetts' requirements for doing so. As a result, Defendant's Blue Diamond products were
misbranded.

131.    Plaintiff and the Class purchased misbranded containers of Blue Diamond almond
milk.

132.    Plaintiff and the Class members would not have purchased misbranded Blue Diamond products had they been aware that those products are illegal to sell, violate state and federal law, are misbranded, are not merchantable, are economically worthless, and contained artificial ingredients, synthetic additives and added sugar.

133.    Plaintiff and the Class members were harmed as a result of the purchase of Blue Diamond and are entitled to damages, including the amounts spent on Blue Diamond and punitive damages.

### SECOND CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

134.   Plaintiff repeats and re-alleges each of the above allegations as if fully set forth herein.

135.   Under Massachusetts law, goods to be merchantable must at least be such as
    (a)  pass without objection in the trade under the contract description; and
    (b)  in the case of fungible goods, are of fair average quality within the description; and
    (c)  are fit for the ordinary purposes for which such goods are used; and
    (d)  run, within the variations permitted by the agreement, of even kind, quality and
quantity within each unit and among all units involved; and
    (e)  are adequately contained, packaged, and labeled as the agreement may require; and
    (f)  conform to the promises or affirmations of fact made on the container or label, if any.
ALM GL ch. 106, § 2-314.

136.    The Defendant's misbranded food products violated the implied warranty of merchantability because as misbranded goods unlawfully labeled in violation of state and federal regulations, they were contraband and thus incapable of complying with ALM GL ch. 106, § 2-314(a)-(e).  In addition, because of the false "all natural" labeling statements on the labels of the Defendant's misbranded food products and the use of the false and misleading term "evaporated cane juice" in the ingredient lists found on the labels of the Defendant's misbranded food products to describe the sugar they contained, the Defendant's misbranded food products failed to conform to the promises or affirmations of fact made on the container or label of these products and thus breached the implied warranty of merchantability.

137.    Implied in the purchase of Blue Diamond by Plaintiff and the Class is the warranty that the purchased products are legal and can be lawfully sold or resold and are not contraband.

138.    Implied in the purchase of Blue Diamond by Plaintiff and the Class is the warranty that the purchased products are properly labeled and packaged.

139.    Defendant knowingly and intentionally misbranded Blue Diamond products.

140.    Misbranded food products are contraband.

141.    Defendant knew its misbranded Blue Diamond products were illegal.

142.    Plaintiff would not have knowingly purchased products that were illegal, misbranded, contraband or unsellable.

143.    Plaintiff would not have knowingly purchased products that were illegal to sell or resell.

144.    No reasonable consumer would knowingly purchase products that are illegal, misbranded, contraband, or unsellable.

145.    No reasonable consumer would purchase products that cannot be legally sold or resold.

146.    The purchased Blue Diamond products were unfit for the ordinary purpose for which Plaintiff and the Class purchased them.

147.    As misbranded products that could not be legally sold or resold, the Blue Diamond products were not merchantable.

148.    As a result, Plaintiff and the Class were injured through their purchase of unsuitable, useless, illegal, misbranded, and unsellable products.

149.    Plaintiff would not have purchased misbranded Blue Diamond products if Plaintiff knew they failed to conform to the promises and affirmations of fact made on the container or label of these products and thus breached the implied warranty of merchantability.

150.    By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for misbranded Blue Diamond products, together with punitive damages.

### THIRD CAUSE OF ACTION
### (Breach of Express Warranty)

151.    Plaintiff repeats and re-alleges each of the above allegations as if fully set forth

herein.

152.     Plaintiff and the Class were the intended targets of Defendant's misrepresentations.

153.     Plaintiff and the Class reasonably relied on Defendant's misrepresentations.

154.     Defendant's affirmations of fact and/or promises relating to their Blue Diamond products created express written warranties that the products would conform to Defendant's affirmations of fact and/or promises.

155.     Alternatively, Defendant's descriptions of their Blue Diamond products became part of the bases of the bargains, creating express written warranties that the products purchased by Plaintiff and the other Class members would conform to Defendant's descriptions and specifications.

156.     In fact, the Blue Diamond products purchased by Plaintiff did not so conform to the descriptions and specifications.

157.     Defendant expressly warrants on the labels of Blue Diamond products that they are "all natural."

158.     Blue Diamond products are not "all natural" and, in fact, contain artificial ingredients and synthetic additives.

159.     Plaintiff and members of the Class relied on the defendant's false labeling representation that Blue Diamond products are "all natural."

160.     Defendant expressly warrants on the labels of Blue Diamond products that they contain "evaporated cane juice" as an ingredient.

161.     Plaintiff and members of the Class relied on the Defendant's false labeling representation that Blue Diamond products contained "evaporated cane juice" as an ingredient and did not contain added sugar as an ingredient.

162.     Defendant has breached its express warranty.

163.     As a result of the foregoing, Plaintiff and the other Class members have suffered damages in that the value of the products they purchased was less than warranted by Defendant.

164.    Plaintiff and the Class were injured as a result of Defendant's breach of their express warranties about Blue Diamond almond milk products.

165.    By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Blue Diamond products, together with punitive damages.

### FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

166.    Plaintiff repeats and re-alleges each of the above allegations as if fully set forth herein.

167.    Defendant had a duty to disclose the presence of artificial ingredients, synthetic additives and added sugar in Blue Diamond almond milk products.

168.    In making misrepresentations of fact and omissions of material fact to Plaintiff and the other Class members about their Blue Diamond products, Defendant failed to fulfill their duties to disclose the material facts alleged above.  Among the direct and proximate causes of said failure to disclose were the negligence and carelessness of Defendant.

169.    Plaintiff and the other Class members, as a direct and proximate cause of Defendant's breaches of their duties, reasonably relied upon such representations and omissions to their detriment.

170.    By reason of the foregoing, Plaintiff and the other Class members have suffered damages in an amount to be proved at trial, together with punitive damages.

### FIFTH CAUSE OF ACTION
### (Negligence)

171.    Plaintiff repeats and re-alleges each of the above allegations as if fully set forth herein.

172.    Defendant negligently made misrepresentations of fact and omissions of material fact to Plaintiff and the other Class members about their Blue Diamond products.

173.    Defendant failed to label or advertise their Blue Diamond products in a lawful manner and violated their duties to disclose the material facts alleged above.

174.    Plaintiff and the other Class members, as a direct and proximate cause of Defendant's breaches of their duties, reasonably relied upon such representations to their detriment.

175.    As described above, Defendant's actions violated a number of express statutory provisions designed to protect Plaintiff and the Class.

176.    Defendant's illegal actions constitute negligence *per se*.

177.    Moreover, the statutory food labeling and misbranding provisions violated by Defendant are strict liability provisions.

178.    By reason of the foregoing, Plaintiff and the other Class members have suffered damages in an amount to be determined at trial, together with punitive damages.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

179.    Plaintiff repeats and re-alleges each of the above allegations as if fully set forth herein.

180.    As a result of Defendant's unlawful and deceptive actions described above, Defendant was enriched at the expense of Plaintiff and the Class through the payment of the purchase price for Blue Diamond almond milk products.

181.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that they received from the Plaintiff and the Class.

182.    By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Blue Diamond products, together with punitive damages.

## SEVENTH CAUSE OF ACTION
### (Money Had and Received)

183.    The manufacture, delivery, offer to delivery or sale of a misbranded food product is an illegal act in Massachusetts.  Such practices are expressly prohibited by Massachusetts law.

184.    The sale of a misbranded product violates the public policy of Massachusetts.

185.    The misbranded Blue Diamond products purchased by Plaintiff and the Class were illegal and worthless as a matter of law.

186.    Plaintiff and members of the Class were unaware that the Blue Diamond products they purchased were misbranded, illegal, and worthless.

187.    Defendant received the money from Plaintiff and the Class used to purchase Blue Diamond products.

188.    Defendant benefitted from receipt of this money.

189.    Under principles of equity and good conscience, Defendant should not be permitted to keep this money.

190.    Plaintiff and the members of the Class are thus entitled to recovery of the funds they expended to purchase the Defendant's misbranded Blue Diamond products, together with punitive damages.


**EIGHTH CAUSE OF ACTION**
**(Injunctive and Declaratory Relief/Defendant Violated Federal and State Laws Regarding Mislabeled and Misbranded Food Products)**

191.    Plaintiff repeats and re-alleges each of the above allegations as if fully set forth herein.

192.    The manufacture, sale, delivery or offer to deliver of a misbranded food product is an illegal act in Massachusetts.  Such practices are expressly prohibited by federal and Massachusetts law.

193.    The manufacture, sale, delivery or offer to deliver of a misbranded product violates the public policy of Massachusetts.

194.    The sale of a misbranded product in Massachusetts constitutes an illegal contract and is void under federal law and the laws of Massachusetts.

195.    Plaintiff and other members of the Class who purchased Blue Diamond almond milk products in Massachusetts further seek to enjoin such unlawful deceptive and unconscionable trade practices as described above.  Each of the Class members who purchased Blue Diamond almond milk products in Massachusetts will be irreparably harmed unless the unlawful actions of the Defendant are enjoined in that Defendant will continue to falsely and misleadingly and unlawfully conceal the artificial ingredients, synthetic additives and added sugar contained in misbranded Blue Diamond almond milk products and to illegally manufacture, distribute and sell these illegally labeled, misbranded products in violation of the food and drug laws that prohibit such actions.

196.    A case or controversy exists among Plaintiff, the Class and Defendant as to applicability of the federal and state laws as to each Defendant.

197.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered and will continue to suffer damages.

198.    Plaintiff, on behalf of himself and the Class, request a declaration of rights and duties with respect to all Defendant including a declaration that the Defendant Blue Diamond products are illegally labeled and misbranded, and an Order enjoining Defendant from continuing to market, advertise, distribute, and sell Blue Diamond almond products in the unlawful manner described herein; and ordering Defendant to engage in corrective action.

199.    Absent such injunctive relief, Defendant will continue to illegally manufacture, distribute and sell mislabeled and misbranded Blue Diamond almond products to the detriment of consumers in the state of Massachusetts.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of Plaintiff's claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all other similarly situated

persons, prays for judgment against Defendant as follows:

      A.      For an order certifying this case as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class;

      B.      For an order awarding, as appropriate, damages, restitution, and/or disgorgement to Plaintiff and the Class including all monetary relief to which Plaintiff and the Class are entitled pursuant to under Massachusetts law.

      C.      For an order requiring Defendant to immediately cease and desist from selling Blue Diamond almond milk products in violation of law; enjoining Defendant from continuing to manufacture, deliver, offer to deliver, market, advertise, distribute, and sell Blue Diamond almond milk products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

      D.      For all equitable remedies available as a result of the fact that the sale of a misbranded product is an illegal contract that is void under Massachusetts law.

      E.      For an order awarding attorneys' fees and costs;

      F.      For an order awarding punitive damages;

      G.      For an order awarding pre-judgment and post-judgment interest; and

      H.      For an order providing such further relief as this Court deems just and proper.

Dated: Boston, Massachusetts
September 11, 2014

                        MIRABELLA LAW, LLC

                        By: _____ */s/Erica Mirabella*

                        Erica C. Mirabella
                        MIRABELLA LAW, LLC
                        132 Boylston Street, 5th Floor
                        Boston, MA  02116
                        Telephone: 617-580-8270
                        Facsimile: 617-583-1905
                        erica@mirabellaLLC.com

Charles J. LaDuca
Bonnie J. Prober
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814
Telephone: 202-789-3960
Facsimile: 202-589-1813
charles@cuneolaw.com
bprober@cuneolaw.com

Don Barrett
DON BARRETT, P.A.
P.O. Box 927
404 Court Square North
Lexington, MS 39095
Telephone: (662) 834-2488
Toll Free: (877) 816-4443
Fax: (662) 834-2628
donbarrettpa@gmail.com

Robert A. Clifford
CLIFFORD LAW OFFICES, PC
120 North LaSalle, 31st Floor
Chicago, IL 60602
Telephone: (312) 899-9090
Facsimile: (312) 251-1160
chd@cliffordlaw.com

Zona Jones
PROVOST UMPHREY LAW FIRM, LLP
490 Park Street
Beaumont, Texas 77701
Telephone: (409) 835-6000
Fax: (409) 813-8618
zjones@pulf.com

Keith M. Fleischman
THE FLEISCHMAN LAW FIRM, PLLC
565 Fifth Avenue, Seventh Floor
New York, New York 10017
Telephone: (212) 880-9571
Fax:  (917) 591-5245
keith@fleischmanlawfirm.com

Dewitt M. Lovelace
LOVELACE AND ASSOCIATES, LLC
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone: (850) 837-6020
Fax: (850) 837-4093
dml@lovelacelaw.com

Ben F. Pierce Gore
PRATT & ASSOCIATES
1871 The Alameda, Suite 425
San Jose, CA 95126
Telephone: 408.429.6506
Facsimile: 408.369.0752
pgore@prattattorneys.com

*Counsel for Plaintiff*