UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASLEY VASS, individually,
and on behalf of all others
similarly situated,
    Plaintiff,

v.                                  CIVIL ACTION NO. 14-13610-IT

BLUE DIAMOND GROWERS,
    Defendant.

REPORT AND RECOMMENDATION ON
DEFENDANT BLUE DIAMOND GROWERS'
MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)
<u>OR, IN THE ALTERNATIVE, STAY THE PROCEEDINGS (#15)</u>.

KELLEY, U.S.M.J.

I. <u>Introduction</u>

On September 11, 2014, plaintiff Casley Vass, individually and on behalf of all others similarly situated, filed a complaint (#1) against defendant Blue Diamond Growers. Less than a month later on October 6, 2014, Vass filed an amended class action complaint (#7) alleging the following claims against Blue Diamond: Count I, violation of Mass. Gen. L. c. 93A; Count II, violation of Mass. Gen. L. c. 94 §§ 187 and 190 and 105 CMR 520.116; Count III, breach of implied warranty of merchantability; Count IV, breach of express warranty; Count V, negligent

misrepresentation; Count VI, negligence; Count VII, unjust enrichment; Count VIII, money had and received; and Count IX, declaratory judgment that Defendant violated federal and state laws regarding mislabeled and misbranded food products.

In response, Blue Diamond filed a motion to transfer the case to the Northern District of California or, in the alternative, to stay on November 3, 2014. (#15.) This motion has been fully briefed (##16, 22, 41, 42, 44) and has been referred to the undersigned for the issuance of a report and recommendation as to disposition.

## II. The Facts

According to the allegations of the amended complaint, Vass is a resident of Boston, Massachusetts who has purchased Blue Diamond Purchased Product[1] in the Commonwealth within the past four years. (#7 ¶ 14.) Plaintiff brings this action on behalf of himself and "[a]ll persons in Massachusetts who, from September 11, 2010, until the date of notice, purchased almond milk products manufactured, distributed and/or sold by Blue Diamond Growers containing the label statements 'evaporated cane juice'[2] and/or 'All Natural.'" (#7 ¶ 8.) Blue Diamond, a California corporation

---

[1] As defined in the amended complaint, "'Purchased Product' is Blue Diamond's Almond Breeze Shelf Stable Chocolate Almond Milk purchased by Plaintiff during the Class Period." (#7 ¶ 7.)

[2] The Court acknowledges that Plaintiff is voluntarily dismissing "without prejudice all claims relating to Defendant's labeling of its Blue Diamond Almond Milk as 'Evaporated Cane Juice'" (#28 at 3 n.1), but recites the allegations of the amended complaint in full for completeness.

2

with a principal place of business in Sacramento, California, is a leading producer of retail food products, including the Purchased Product and Substantially Similar Products.[3] (#7 ¶¶ 15, 16.) Defendant sells its products to consumers in Massachusetts. (#7 ¶ 16.)

Plaintiff describes his case as having two prongs. (#7 ¶ 5.) The first involves Blue Diamond's alleged unlawful sale and misbranding of its products. (#7 ¶ 5.) Food manufacturers are required to comply with state and federal laws and regulations that govern the labeling of food products. (#7 ¶ 22.) Massachusetts has adopted the federal labeling requirements. (#7 ¶ 23.) The FDA has a policy about use of the term "natural," to wit, it is to be used only if no unexpected artificial or synthetic ingredients have been included in that food. (#7 ¶ 31.) The FDA has repeatedly affirmed this policy, and has issued multiple warning letters about the issue. (#7 ¶¶ 30, 32.)

According to Vass, Defendant knew about the warning letters. (#7 ¶ 32.) Notwithstanding this policy and the numerous warnings, Blue Diamond is alleged to have unlawfully labeled food products, including the Purchased Product and the Substantially Similar Products, as "all natural" when they contain artificial ingredients

---

[3] As defined in the amended complaint, "Substantially Similar Products" are a number of Blue Diamond almond milk products that are alleged to make the same label misrepresentations as the Purchased Product and violate the same Massachusetts food labeling regulations. (#7 ¶¶ 3, 4.)

3

and synthetic additives. (#7 ¶ 33.) This mislabeling is said to violate various provisions of the Massachusetts Food Code. (#7 ¶ 34.) Further, consumers are purportedly misled into buying Defendant's products labeled as "all natural" when they in fact contain synthetic additives and artificial ingredients. (#7 ¶¶ 37-39.)

The Purchased Product is labeled as containing "evaporated cane juice." (#7 ¶ 41.) In Plaintiff's view, this is a misbrand because "evaporated cane juice" is not juice, but sugar. (#7 ¶¶ 42, 43.) The label claim of the product containing evaporated cane juice rather than sugar is allegedly false and employed to increase sales by misleading customers into believing that they are purchasing a healthier product. (#7 ¶¶ 42, 43.) The "FDA has issued a number of warning letters and policy statements that expressly object to the use of the term 'evaporated cane juice' as being false and misleading and prohibited by labeling regulations." (#7 ¶ 47.) Despite being aware of the policy statements and warning letters, Defendant used the term evaporated cane juice to mislead customers into purchasing its products. (#7 ¶ 52.) In misbranding its products' ingredient lists, Blue Diamond is said to have violated federal and Massachusetts laws and regulations. (#7 ¶¶ 48-51.)

The second aspect of Plaintiff's case concerns Blue Diamond's alleged deceptive practices. (#7 ¶ 6.) According to Vass, "[t]he Purchased Product has a label that violates Massachusetts law and is therefore misbranded and may not be sold or

purchased." (#7 ¶ 54.) The label includes the following allegedly unlawful and misleading language: "All Natural," "Almond Breeze® Almondmilk is an all natural, great tasting NON-DAIRY BEVERAGE," and "All Natural with added Vitamins and Minerals." (#7 ¶ 56.) In addition, purportedly unlawful and misleading language appears in the label's list of ingredients:

> "INGREDIENTS": ALMONDMILK (FILTERED WATER, ALMONDS), EVAPORATED CANE JUICE, COCOA (DUTCH PROCESS), CALCIUM CARBONATE, SEA SALT, POTASSIUM CITRATE, CARRAGEENAN, NATURAL FLAVORS, SUNFLOWER LECITHIN, VITAMIN A PALMITATE, VITAMIN D-2 AND D-ALPHA-TOCOPHERAL (NATURAL VITAMIN E).

(#7 ¶ 57.)

The label is said to be misleading and deceptive because, although identified as being "all natural," the Purchased Product contains artificial ingredients, i.e., cocoa (Dutch Process), potassium citrate, Vitamin A Palmitate, Vitamin D-2 and Vitamin D-Alpha-Tocopheral. (#7 ¶ 59.) The Purchased Product is also alleged to be misleading, deceptive and in violation of Massachusetts law because it lists "EVAPORATED CANE JUICE" as an ingredient which is really sugar, not juice. (#7 ¶ 60.) Vass asserts that he relied on the label misrepresentations in buying the Purchased Product. (#7 ¶ 58.)

Blue Diamond is alleged to have made the same false labeling claims on the

5

Substantially Similar Products as were made on the Purchased Product. (#7 ¶ 74.) "All containers of Blue Diamond almond milk listed in this Class Action Complaint are misbranded and illegal." (#7 ¶ 79.) As a consequence of the mislabeling, Defendant allegedly has violated Massachusetts laws and regulations. (#7 ¶¶ 85-92.) Having been misled by Blue Diamond's allegedly unlawful misrepresentations, Plaintiff and others in Massachusetts and throughout the country purchased misbranded Blue Diamond almond milk products and were injured as a consequence. (#7 ¶¶ 99, 101, 102, 104-108.)

### III. The Law

Blue Diamond seeks to have this action transferred to the United States District Court for the Northern District of California. Title 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Citing 28 U.S.C. §§ 1391(b)(1)[4] and (c)(2),[5] Defendant states that venue would be proper in

---

[4] Title 28 U.S.C. § 1391(b)(1) provides that "[a] civil action may be brought in a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located."

[5] Title 28 U.S.C. § 1391(c)(2) provides, in relevant part, that "[f]or all venue purposes an entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such

6

the Northern District of California because Blue Diamond resides there.[6] (#16 at 4.)

As explained by the First Circuit:

> 'Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness.' *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)). . . . We review a 'district court's decision on transfer of venue for an abuse of discretion.' *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir.2000)*; Cianbro Corp. v. Curran-Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir.1987). Not only does the burden of proof rest with the party seeking to transfer; there is a 'strong presumption in favor of the plaintiff's choice of forum.' *Coady*, 223 F.3d at 11.

*Astro-Med, Inc. v. Nihon Kohden America, Inc.*, 591 F.3d 1, 12-13 (1st Cir. 2009); *Sindi v. El-Moslimany*, 2014 WL 6893537, at *12 (D. Mass. Dec. 5, 2014). The

---

defendant is subject to the court's personal jurisdiction with respect to the civil action in question."

[6]
     Vass alleges in the amended complaint that Blue Diamond "is a California corporation with its principal place of business in Sacramento, California." (#7 ¶ 15.) Although Defendant has not answered the amended complaint so as to admit or deny this allegation, nor has an affidavit been filed in support of Blue Diamond's motion, pleadings relating to other cases pending against Blue Diamond in the Northern District have been filed as exhibits. (#16, Exh. 1-8.) These exhibits are said to demonstrate that this case might properly have been brought in the Northern District. However, Blue Diamond admitted in its answer to the Second Amended Complaint in *Werdebaugh v. Blue Diamond Growers*, 12-cv-02724-LHK, that it was a California corporation with its principal place of business in Sacramento, California. (#16, Exh. 7 ¶ 17.) Sacramento is located in the Eastern District of California. In any event, since Vass has not opposed the motion to transfer on the grounds that venue would not lie in the Northern District, the Court shall deem this to be a waiver of any such argument.

7

Court must examine a variety of factors in order to determine whether to transfer Plaintiff's claims.[7] "In addition to the convenience of parties and witnesses, the factors to be considered by the court include the availability of documents; the possibility of consolidation; and the order in which the district court obtained jurisdiction." *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000); *Sindi*, 2014 WL 6893537, at *12. The Court also considers the interests of justice. *See id.* Throughout its analysis, "the Court is mindful that the statute's purpose is 'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *World Energy Alternatives, LLC v. Settlemyre Industries, Inc.*, 671 F. Supp.2d 215, 217 (D. Mass. 2009) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)); *Sindi*, 2014 WL 6893537, at *12. Defendant bears the burden of showing that transfer is warranted under the

---

[7]

When deciding a motion to transfer, a leading treatise notes that:

> [M]ost courts divide the relevant factors into private and public categories. . . . Public factors - which encompass the statutory consideration of the interest of justice - focus on judicial economy and often include the district court's familiarity with governing law, the local interest in deciding local controversies at home, and the relative congestion of the courts. Private factors include the statutory considerations of convenience of the parties and witnesses, but also include the plaintiff's forum preference, where the claim arose, and the relative ease of access to sources of proof.

15 Wright, Miller, Cooper, and Freer, *Federal Practice and Procedure*: Jurisdiction 4d § 3847 (2013).

circumstances. *Astro-Med*, 591 F.3d at 13; *World Energy Alternatives*, 671 F. Supp.2d at 217; *Sindi*, 2014 WL 6893537, at *12.

IV. Discussion

When the motion to transfer was filed, substantially similar[8] litigation, *Werdebaugh v. Blue Diamond Growers* case, 12-cv-02724-LHK, was pending in the Northern District of California. (#16, Exh. 1, Seconded Amended Complaint in 12-cv-02724-LHK.) Blue Diamond argued that it was more convenient for Defendant and its witnesses if the case was transferred and, further, that a transfer would serve the interests of justice and judicial economy. However, as time has passed, the status of two cases in the Northern District involving use of the term "natural" on food labels has changed.

In the case of *Brazil v. Dole Packaged Foods, LLC*, No. 12-cv-01821-LHK, the damages class was decertified in November 2014 and summary judgment[9] was granted in favor of the defendant on all claims in December 2014.[10] (#41, Exh. A and

---

[8] This is Defendant's description. Plaintiff calls the *Werdebaugh v. Blue Diamond Growers* case, 12-cv-02724-LHK, "non-overlapping." (#44 at 1.)

[9] Judge Koh determined that "there is insufficient evidence that the 'All Natural Fruit' label statement on the challenged Dole products was likely to mislead reasonable consumers and that the label statements were therefore unlawful on that basis." (#41, Exh. B at 6.) The Court did not decide whether "the challenged products are anything but 'natural'." (#41, Exh. B at 6.)

[10] Defendant states that "[o]n December 18, 2014, Judge Koh entered summary judgment in

9

Exh. B.) Also in December of 2014, Judge Koh denied a motion for reconsideration of the prior decertification order as well as an earlier dismissal of an unjust enrichment claim. (#41, Exh. C.) In the *Werdebaugh v. Blue Diamond Growers* case, 12-cv-02724-LHK, Judge Koh allowed Blue Diamond's motion to decertify the damages class on December 15, 2014 and then denied a motion to reconsider that ruling at the end of January 2015. (#41, Exh. D and Exh. F.) On February 11, 2015, Werdebaugh's motion voluntarily to dismiss the case was allowed. (#41, Exh. G.)

In short, at this juncture, two cases involving use of the term "natural" on food labels[11] in the Northern District have been dismissed.[12] Pendency of the *Werdebaugh* case was a key reason for Defendant seeking a transfer. With the *Werdebaugh* case having been dismissed, there is no danger that Blue Diamond will be litigating what it claims to be essentially the same case in two different forums. Any "first-filed" considerations are now moot. *Espey & Associates, Inc. v. Principal Mfg. Corp.*, 2009

---

favor of defendant in *Bruton v. Gerber Products, Co.*, [12-cv-02412-LHK,] another case involving use of the term 'natural' on food labels." (#41 at 2.) Review of that decision reveals that Judge Koh stated Bruton alleged "two types of unlawful and deceptive claims on its product labels: 'nutrient content claims' . . . and 'sugar-related claims.'" (#41, Exh. E at 3.) No mention of a "natural" claim is made in the summary judgment decision. (#41, Exh. E.)

[11]
    Defendant notes that a case related to *Werdebaugh*, *Tchayelian v. Blue Diamond Growers*, 14-cv-00091-LHK, was also voluntarily dismissed. (#41 at 2.)

[12]
    Blue Diamond claims that more than sixty food labeling cases have been filed by the same group of lawyers in the Northern District of California. (#41 at 1.)

WL 721740, at *1 (N.D. Ohio Mar. 18, 2009) ("Defendant Principal's briefings on dismissal or venue transfer focus on the first-to-file rule. . . . Because the Southern District of Ohio court has dismissed the first-filed suit . . . , the first-to-file argument is moot."); *C-Mart, Inc. v. Metropolitan Life Ins. Co.*, 2013 WL 2403666, *2 (E.D. Mo. May 31, 2013). The argument Judge Koh could possibly yet designate this case, if transferred, as related to the dismissed actions is tenuous and carries little force.

## A. Private Factors

Turning first to the convenience of the parties, Plaintiff is a resident of Boston, Massachusetts (#7 ¶ 14) and the class he purportedly represents is limited to "persons in Massachusetts." (#7 ¶ 8.) "When the home forum has been chosen, it is reasonable to assume that this choice is convenient." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981). Blue Diamond if a California corporation with a principal place of business in that state. (#7 ¶ 15.) In either venue, one party will be inconvenienced. While litigating in the Commonwealth may be inconvenient for Defendant, to transfer the case to California would only shift the inconvenience to Plaintiff. *Johnson v. New York Life Ins. Co.*, 2013 WL 1003432, at *1 (D. Mass. Mar. 14, 2013); *Gemini Investors Inc. v. Ameripark, Inc.*, 542 F. Supp.2d 119, 126 (D. Mass. 2008); *Boateng v. General Dynamics Corp.,* 460 F. Supp.2d 270, 277 (D. Mass. 2006) ( "[T]he convenience of the parties does not warrant transfer to North Carolina, as it would

merely shift inconvenience from defendants to Boateng, and defendants are best situated to absorb and spread the costs of this litigation.").

Blue Diamond argues that the usual presumption in favor of Plaintiff's choice of forum is diminished in a putative class action suit. *Johnson*, 2013 WL 1003432, at *3 ("The court recognizes that generally, there is a strong presumption in favor of plaintiffs' choice of forum. However, the weight accorded to a plaintiff''s choice of forum varies with the circumstances of the case. A plaintiff's choice of forum is less significant, for example, in the context of class actions." (internal quotation marks and citations omitted)). In this instance, however, the proposed class as alleged in the amended complaint is limited to residents of the Commonwealth and Plaintiff has filed suit in his home state. *Actifio, Inc. v. Delphix Corp.*, 2015 WL 1243164, at *6 (D. Mass. Mar. 17, 2015) (presumption in favor of plaintiff's choice of forum afforded more weight when case commenced in home forum).

The convenience of witnesses is "an extremely important, if not the most important, factor to be analyzed in determining whether to change a litigation's venue." *Gemini Investors Inc.*, 542 F. Supp.2d at 126 (citing *Brant Point Corp. v. Poetzsch*, 671 F. Supp. 2, 3 (D. Mass. 1987) (further citation omitted)); *Actifio, Inc.*, 2015 WL 1243164, at *8. When assessing the convenience of the witnesses, the Court "must consider the number of potential witnesses located in both the transferor and

the transferee district, the nature and quality of their testimony, and whether the witnesses can be compelled to testify." *Gemini Investors Inc.*, 542 F. Supp.2d at 126 (internal citation and quotation marks omitted)). In order to achieve a meaningful analysis, the "party seeking transfer . . . must, therefore, specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail." *Id.* (internal citation quotation marks omitted).

Regarding witnesses, Blue Diamond directs the Court to pleadings in the *Werdebaugh* case in order to establish that convenience of witnesses weighs in favor of transfer. (#16 at 5.) In its initial disclosures in the *Werdebaugh* case, Defendant identified four individuals who likely had discoverable information: the General Manager of the Consumer Products Division for Blue Diamond; the Manager of Product Development for Blue Diamond; the Senior Marketing Manager - Almond Breeze; and an Assistant Manager, Technical Services for Blue Diamond. (#16, Exh. 8.) Defendant does not assert that these individuals are witnesses who will testify at trial, nor does the disclosure detail to what the individuals, if they were witnesses, would testify.[13] Moreover, Blue Diamond does not state where these individuals

---

13

Defendant does identify the subjects on which each individual likely has discoverable information. (#16, Exh. 8 at 2.)

reside or work,[14] so the Court could only assume that it would be more convenient for these individuals if the case was transferred to the Northern District of California.[15] Those points aside, since the four individuals are employees of Blue Diamond, Defendant can direct them to appear in court in Massachusetts. *Actifio, Inc.,* 2015 WL 1243164, at *8 ("the parties' employees will testify regardless of the venue"); *Boateng*, 460 F. Supp.2d at 277 ("Convenience of the witnesses does not support transfer, because although a majority of the expected witnesses reside in North Carolina, virtually all of them are employed by defendants, and defendants can therefore readily procure their appearance in Massachusetts.")

Plaintiff, on the other hand, is a resident of Boston who, according to his affidavit, works two jobs to support his children and mother. (#22, Exh. 1.) Vass avers that, in light of his schedule and inability to take time off from work, it would be a hardship for him to attend a trial in California. (#22, Exh. 1.) Further, a nationwide class in not alleged here; the class alleged in the amended complaint is limited to "[a]ll persons in Massachusetts" (#7 ¶ 8) who purchased the Purchased

---

[14] In each instance, Defendant states that the individual "may be contacted through counsel of record for Blue Diamond." (#18, Exh. 8 at 2.)

[15] It might reasonably be presumed these Blue Diamond employees are based in California. However, even assuming that these individuals all worked at Defendant's principal place of business, again, that is alleged to be in Sacramento, California which is in the Eastern District.

Product or Substantially Similar Products during the class period. It appears likely that Plaintiff's witnesses are residents of the Commonwealth, too.

Vass alleges that he bought the Purchased Product in Massachusetts; the proposed class is defined as persons in the Commonwealth who bought Substantially Similar Products. The claims alleged arise under Massachusetts law and Massachusetts law will apply.[16] *See Sindi*, 2014 WL 6893537, at *12. These considerations support Plaintiff's position that the case should remain in Massachusetts.

### B. Public Factors

The District Court for the District of Massachusetts has familiarity with the governing law in this case, that being the state law of Massachusetts. Moreover, the recognized interest in litigating a local controversy in the local forum weighs against transfer.

Defendant relies on the *Johnson* case as support for its argument that the interests of justice militate in favor of transfer. *Johnson*, 2013 WL 1003432, at *2.

---

[16] While Blue Diamond suggests that Plaintiff, or Plaintiff's attorneys, have engaged in forum shopping (a proposition that is disputed), there plainly is a connection between Vass and the Commonwealth of Massachusetts. *Compare Group-A Autosports, Inc. v. Billman*, 2014 WL 3500468, at *3 (D. Mass. July 9, 2014) ("However, where the operative facts of the case have no material connection with the district in which the case has been filed, the plaintiff's choice of forum carries less weight." (internal citation and quotation marks omitted)).

Of particular importance in *Johnson* was "the pendency of related litigation in the transferee forum, [that] weigh[ed] heavily in favor of transfer." *Johnson*, 2013 WL 1003432, at *2. That factor is now absent in the case at hand. Second, unlike the facts in *Johnson*, this is not a situation where a dispositive issue has been analyzed and decided by the judge in the transferee court. *Werdebaugh* was dismissed before substantive rulings were rendered. The issue upon which summary judgment was decided in *Brazil* is not identical to any issues presented in the instant case. The interest in judicial economy would not be advanced by transferring this case to California.

## V. Conclusion

After considering and balancing the § 1404(a) factors, the Court cannot say that they weigh in favor of transfer. Further, the Court does not see that appeals pending in the Ninth Circuit in food labeling cases provide any reason to stay the instant case in which Massachusetts state law applies.[17]

Because Blue Diamond has not carried its heavy burden of proving that a transfer out of Plaintiff's home forum is warranted, I RECOMMEND that Defendant Blue Diamond Growers' Motion To Transfer Pursuant To 28 U.S.C. § 1404(a) Or, In

---

[17] The cases upon which Defendant relies in seeking a stay are from California. (#41 at 5-6.)

16

The Alternative, Stay The Proceedings (#15) be DENIED.

VI. Review by District Judge

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

April 22, 2015

/s/ M. Page Kelley
M. Page Kelley
United States Magistrate Judge