UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CASLEY VASS, individually,
and on behalf of all others
similarly situated,
        Plaintiff,


        v.                                    CIVIL ACTION NO. 14-13610-IT


BLUE DIAMOND GROWERS,
        Defendant.

REPORT AND RECOMMENDATION ON
DEFENDANT BLUE DIAMOND GROWERS'
 MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT (#23).

KELLEY, U.S.M.J.

I. Introduction

On September 11, 2014, plaintiff Casley Vass, individually and on behalf of all

others similarly situated, filed a complaint (#1) against defendant Blue Diamond

Growers.  Less than a month later on October 6, 2014, Vass filed an amended class

action complaint (#7) alleging the following claims against Blue Diamond:  Count I,

violation of Mass. Gen. L. c. 93A; Count II, violation of Mass. Gen. L. c. 94 §§ 187

and 190 and 105 CMR 520.116; Count III, breach of implied warranty of

merchantability; Count IV, breach of express warranty; Count V, negligent

misrepresentation; Count VI, negligence; Count VII, unjust enrichment; Count VIII,

money had and received; and Count IX, declaratory judgment that Defendant violated

federal and state laws regarding mislabeled and misbranded food products.

Blue Diamond filed a motion to dismiss the amended class action complaint

(#23) on November 17, 2014.  This dispositive motion has been fully briefed. (##24,

28, 29, 32, 36.)  The motion to dismiss has been referred to the undersigned for the

issuance of a report and recommendation.

## II. The Facts

According to the allegations of the amended complaint, Vass is a resident of

Boston, Massachusetts who has purchased Blue Diamond Purchased Product[1] in the

Commonwealth within the past four years. (#7 ¶ 14.)  Plaintiff brings this action on

behalf of himself and "[a]ll persons in Massachusetts who, from September 11, 2010,

until the date of notice, purchased almond milk products manufactured, distributed

and/or sold by Blue Diamond Growers containing the label statements 'evaporated

cane juice' and/or 'All Natural.'" (#7 ¶ 8.)  Blue Diamond, a California corporation

with a principal place of business in Sacramento, California, is a leading producer of

retail food products, including the Purchased Product and Substantially Similar

---

[1]

    As defined in the amended complaint, "'Purchased Product' is Blue Diamond's Almond
Breeze Shelf Stable Chocolate Almond Milk purchased by Plaintiff during the Class Period." (#7
¶ 7.)

Products.[2] (#7 ¶¶ 15, 16.)  Defendant sells its products to consumers in Massachusetts. (#7 ¶ 16.)

Plaintiff describes his case as having two prongs. (#7 ¶ 5.)  The first facet involves Blue Diamond's alleged unlawful sale and misbranding of its products. (#7 ¶ 5.)  Food manufacturers are required to comply with state and federal laws and regulations that govern the labeling of food products. (#7 ¶ 22.)  Massachusetts has adopted the federal labeling requirements. (#7 ¶ 23.)  The FDA has a policy about use of the term "natural," to wit, it is to be used only if no unexpected artificial or synthetic ingredients have been included in, or added to, that food. (#7 ¶ 31.)  The FDA has repeatedly affirmed this policy, and has issued multiple warning letters about the issue. (#7 ¶¶ 30, 32.)

According to Vass, Defendant knew about the warning letters. (#7 ¶ 32.)  Notwithstanding this policy and the numerous warnings, Blue Diamond is alleged to have unlawfully labeled food products, including the Purchased Product and the Substantially Similar Products, as "all natural" when they contain artificial ingredients and synthetic additives. (#7 ¶ 33.)  This mislabeling is said to violate various provisions of the Massachusetts Food Code. (#7 ¶ 34.)  Further, consumers are

---

[2]     As defined in the amended complaint, "Substantially Similar Products" are a number of Blue Diamond almond milk products that are alleged to make the same label misrepresentations as the Purchased Product and violate the same Massachusetts food labeling regulations. (#7 ¶¶ 3, 4.)

purportedly misled into buying Defendant's products labeled as "all natural" when they in fact contain synthetic additives and artificial ingredients. (#7 ¶¶ 37-39.)

The Purchased Product is labeled as containing "evaporated cane juice." (#7 ¶ 41.) In Plaintiff's view, this is a misbrand because "evaporated cane juice" is not juice, but sugar. (#7 ¶¶ 42, 43.) The label claim of the product containing evaporated cane juice rather than sugar is allegedly false and employed to increase sales by misleading customers into believing that they are purchasing a healthier product. (#7 ¶¶ 42, 43.) The "FDA has issued a number of warning letters and policy statements that expressly object to the use of the term 'evaporated cane juice' as being false and misleading and prohibited by labeling regulations." (#7 ¶ 47.) Despite being aware of the policy statements and warning letters, Defendant used the term evaporated cane juice to mislead customers into purchasing its products. (#7 ¶ 52.) In misbranding its products' ingredient lists, Blue Diamond is said to have violated federal and Massachusetts laws and regulations. (#7 ¶¶ 48-51.)

The second aspect of Plaintiff's case concerns Blue Diamond's alleged deceptive practices. (#7 ¶ 6.) According to Vass, "[t]he Purchased Product has a label that violates Massachusetts law and is therefore misbranded and may not be sold or purchased." (#7 ¶ 54.) The label includes the following allegedly unlawful and misleading language: "All Natural," "Almond Breeze® Almondmilk is an all natural,

great tasting NON-DAIRY BEVERAGE," and "All Natural with added Vitamins and

Minerals." (#7 ¶ 56.)  In addition, purportedly unlawful and misleading language

appears in the label's list of ingredients:

> "INGREDIENTS": ALMONDMILK (FILTERED WATER, ALMONDS), EVAPORATED CANE JUICE, COCOA (DUTCH PROCESS), CALCIUM CARBONATE, SEA SALT, POTASSIUM CITRATE, CARRAGEENAN, NATURAL FLAVORS, SUNFLOWER LECITHIN, VITAMIN A PALMITATE, VITAMIN D-2 AND D-ALPHA-TOCOPHERAL (NATURAL VITAMIN E).

#7 ¶ 57.

The label is said to be misleading and deceptive because, although identified

as being "all natural," the Purchased Product contains artificial ingredients, i.e., cocoa

(Dutch Process), potassium citrate, Vitamin A Palmitate, Vitamin D-2 and Vitamin

D-Alpha-Tocopheral. (#7 ¶ 59.)  The Purchased Product is also alleged to be

misleading, deceptive and in violation of Massachusetts law because it lists

"EVAPORATED CANE JUICE" as an ingredient which is really sugar, not juice. (#7

¶ 60.)  Vass asserts that he relied on the label misrepresentations in buying the

Purchased Product. (#7 ¶ 58.)

Blue Diamond is alleged to have made the same false labeling claims on the

Substantially Similar Products as were made on the Purchased Product. (#7 ¶ 74.)

"All containers of Blue Diamond almond milk listed in this Class Action Complaint

are misbranded and illegal." (#7 ¶ 79.)  As a consequence of the mislabeling, Defendant allegedly has violated Massachusetts laws and regulations. (#7 ¶¶ 85-92.) Having been misled by Blue Diamond's allegedly unlawful misrepresentations, Plaintiff and others in Massachusetts and throughout the country purchased misbranded Blue Diamond almond milk products and were injured as a consequence. (#7 ¶¶ 99, 101, 102, 104-108.)

### III. Motion to Dismiss

At the outset, Plaintiff is voluntarily dismissing "without prejudice all claims relating to Defendant's labeling of its Blue Diamond Almond Milk as 'Evaporated Cane Juice.'" (#28 at 3 n. 1.)  Thus the only claims remaining involve the alleged misbranding and mislabeling of Blue Diamond Purchased Product and Substantially Similar Products by use of the term "All Natural."

Second, Blue Diamond argues that Count Two of the amended complaint must be dismissed because the statutes and regulation that are alleged to have been violated, Mass. Gen. L. c. 94 §§ 187 and 190 and 105 CMR 520.116, do not provide a private right of enforcement.  Plaintiff does not contest this assertion.  Because Vass lacks standing to bring an enforcement action under chapter 94 or section 520.116, Count Two should be dismissed.

### A. The Law - Rule 12(b)(1)

Pursuant to Rule 12(b)(1), Fed. R. Civ. P., a defendant may move to dismiss an action based on lack of federal subject matter jurisdiction.  Because federal courts are considered courts of limited jurisdiction, "[t]he existence of subject-matter jurisdiction 'is never presumed.'" *Fafel v. Dipaola*, 399 F.3d 403, 410 (1st Cir. 2005)(quoting *Viquiera v. First Bank,* 140 F.3d 12, 16 (1st Cir. 1998)).  Rather, "'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.), *cert. denied,* 515 U.S. 1144 (1995) (quoting *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 60 (1st Cir.), *cert. denied,* 510 U.S. 823 (1993)); *Johansen v. U.S.*, 506 F.3d 65, 68 (1st Cir. 2007).  Once a defendant challenges the jurisdictional basis for a claim under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction. *Thomson v. Gaskill,* 315 U.S. 442, 446 (1942); *Johansen*, 506 F.3d at 68.

In ruling on a motion to dismiss for lack of jurisdiction, it is incumbent upon the court to "'credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor.'" *Sanchez ex rel. D.R.-S. v. U.S.*, 671 F.3d 86, 92 (1st Cir. 2012) (quoting *Merlonghi v. United States,* 620 F.3d 50, 54 (1st Cir. 2010)).  Further, the "court may also 'consider whatever evidence has been submitted, such as the depositions and exhibits submitted.'" *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010) (quoting *Aversa v. United States,* 99 F.3d 1200,

7

1210 (1st Cir. 1996)); *Carroll v. U.S.*, 661 F.3d 87, 94 (1st Cir. 2011)("In evaluating a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, we construe plaintiffs' complaint liberally and ordinarily may consider whatever evidence has been submitted, such as . . . depositions and exhibits." (internal citation and quotation marks omitted)).   That being said, a plaintiff cannot assert a proper jurisdictional basis "merely on 'unsupported conclusions or interpretations of law.'" *Murphy,* 45 F.3d at 422 (quoting *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1st Cir. 1993)); *Johansen*, 506 F.3d at 68.

## B. Discussion

*Preemption*

Blue Diamond contends that Plaintiff's state law claims are preempted by the federal law, specifically the Federal Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq*., and so they should be dismissed.

The First Circuit recently had the opportunity to review the principles of federal preemption:

> The United States Constitution's Supremacy Clause provides that federal law 'shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding.' U.S. Const., art. VI, cl. 2. Where state law requires a private party to violate federal law, that state law is 'without effect.' [*Mutual Pharmaceutical Co., Inc. v*.] *Bartlett*, [- U.S. -,] 133 S. Ct. [2466,] 2476-77 [(2013)] (internal quotation marks

8

omitted).  Federal law impliedly preempts state law 'where it is "impossible for a private party to comply with both state and federal requirements."'  *Id.* (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79, 110 S. Ct. 2270, 110 L. Ed.2d 65 (1990)); *see also Freightliner Corp. v. Myrick*, 514 U.S. 280, 287, 115 S. Ct. 1483, 131 L. Ed.2d 385 (1995) (noting that conflict pre-emption also applies 'where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress' (internal quotation marks omitted)).

*In re Celexa and Lexapro Marketing and Sales Practices Litigation*, 779 F.3d 34, 40

(1st Cir. 2015).

Federal preemption of state law occurs in three circumstances: 1) Congress

expressly preempts state law; 2) state law is preempted if it conflicts with federal law

and 3) state law is preempted "when the scope of a [federal] statute indicates that

Congress intended federal law to occupy a field exclusively." *Freightliner Corp. v.*

*Myrick*, 514 U.S. 280, 287 (1995); *see Kurns v. Railroad Friction Products Corp.*, -

U.S. -, 132 S. Ct. 1261, 1266 (2012).  The Supreme Court has repeatedly recognized

that "when the text of a pre-emption clause is susceptible of more than one plausible

reading, courts ordinarily accept the reading that disfavors pre-emption." *CTS Corp.*

*v. Waldburger*, - U.S. -, 134 S. Ct. 2175, 2188 -2189 (2014) (internal citations and

quotation marks omitted).

The Nutritional Labeling and Education Act (NLEA), which amended the

FDCA, prohibits the misbranding of any food in interstate commerce. 21 U.S.C. §

331.  The statute further details the circumstances under which a food "shall be deemed to be misbranded." 21 U.S.C. § 343.  The statute provides that a food is misbranded "[i]f . . . its labeling is false or misleading in any particular." 21 U.S.C. § 343.  Massachusetts has a similar provision in its own food labeling laws. Mass. Gen L. c. 94 § 187 ("The term 'misbranded' . . . shall apply to each . . . article of food  . . . the package or label of which bears any statement, design or device . . . which is false or misleading in any particular.").

The FDA has left establishing a definition of the term "natural" to the future. *See Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms*, 56 FR 60421-01, 60466 (Nov. 27, 1991) ("FDA is also addressing the terms 'natural' and 'organic.' However, as explained below, it is not proposing to establish definitions for the latter terms at this time.").   According to the FDA's "informal policy,"

> The word 'natural' is often used to convey that a food is composed only of substances that are not manmade and is, therefore, somehow more wholesome. In the past, FDA has not attempted to restrict use of the term 'natural' except for added color, synthetic substances, and flavors under § 101.22. In its informal policy (Ref. 53), the agency has considered 'natural' to mean that nothing artificial or synthetic (including colors regardless of source) is included in, or has been added to, the product that would not normally be expected to be there.

10

56 FR 60421-01, 60466.[3]

By regulation in Massachusetts:

> 'Natural food' means food which in its processing has not been treated with preservatives, antibiotics, synthetic additives, artificial flavoring, artificial coloring, or has been processed in such a manner so that it becomes significantly less nutritive. Natural foods may only be processed by extracting, purifying, heating, fermenting, concentrating, dehydrating, cooling, or freezing.

105 CMR 520.116(A)(2).

If food labeled as "natural" does not comply with this definition, it is considered to be misbranded under Massachusetts law. 105 CMR § 520.116(C)(2).

Blue Diamond contends that Vass's "All Natural" claims are expressly preempted because "the definition of 'natural food' that has been adopted in Massachusetts is not identical to even the FDA's non-binding policy." (#24 at 16.) Defendant's argument is flawed.   By their terms, the preemption provisions concerning national uniform nutrition labeling provide that no state may establish

---

[3]

The Federal Register reflects that in January 1993 "[b]ecause of resource limitations and other agency priorities, FDA is not undertaking rulemaking to establish a definition for 'natural' at this time. The agency will maintain its current policy (as discussed in the general principles proposal (56 FR 60421 at 60466)) not to restrict the use of the term 'natural' except for added color, synthetic substances, and flavors as provided in § 101.22. Additionally, the agency will maintain its policy (Ref. 32) regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." *Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms*, 58 FR 2302-01, 2407 (Jan. 6, 1993).

"any requirement for the labeling of food of the type required by" various subsections of NLEA unless they are "identical to the requirements of" each such subsection. *See* 21 U.S.C. § 343-1(a)(2), (3).  Because the FDA's non-binding policy regarding the meaning of the term "natural" is not codified in the NLEA or the regulations promulgated thereunder, those express preemption provisions do not apply.[4] *See*, e.g., *Garcia v. Kashi Co.*, 43 F. Supp.3d 1359, 1372-1373 (S.D. Fla. 2014) (citing cases); *Werdebaugh v. Blue Diamond Growers*, 2013 WL 5487236, at *10 n. 3 (N.D. Cal. 2013) ("The Court notes that several courts in this district and the Third Circuit have held that 'All Natural' and '100% Natural' claims are not expressly preempted by federal law on the alternative basis that the FDA has specifically declined to regulate 'natural' claims, and thus that no federal regulation exists to preempt state law.").

Defendant next argues that the "All Natural" claims are impliedly preempted. The Supreme Court has "found implied conflict pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state

---

[4]

> Section 6(c)(1) of the NLEA, which was enacted, but not codified as part of the FDCA provides: 'The Nutrition Labeling and Education Act of 1990 shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A [21 U.S.C. § 343–1(a) ] of the Federal Food, Drug, and Cosmetic Act.' Pub. L. No. 101–535, § 6(c)(1), 104 Stat. 2353, 2364 (1990).

*Sciortino v. Pepsico, Inc.*, - F. Supp.3d -, 2015 WL 3544522, at *10 (N.D. Cal. June 5, 2015).

law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Sprietsma v. Mercury Marine, a Div. of Brunswick Corp.*, 537 U.S. 51, 64-65 (2002) (internal citations and quotation marks omitted). Blue Diamond's position is without merit because, as noted earlier, to date the FDA does not regulate use of the term "natural." *Garcia*, 43 F. Supp.3d at 1373 ("This argument [that Plaintiffs' claims are impliedly preempted] fails because the FDA . . . has [not] . . . regulated the term "all natural."). Further, it has been specifically determined by one circuit court that, in the context of an implied preemption claim, "the FDA's policy statement regarding use of the term 'natural' is not entitled to preemptive effect." *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 340 (3rd Cir. 2009).

Next, Blue Diamond asserts that Plaintiff's "All Natural" claims are subject to conflict preemption. Defendant has failed to articulate what conflict exists between the federal law and Massachusetts law on this issue. Indeed, courts have concluded that there is no such conflict. *See*, e.g., *Holk*, 575 F.3d at 342 (Because "the FDA policy statement regarding the use of the term 'natural'" does not "have the force of law required to preempt conflicting state law . . . . there is no conflict in this case because there is no FDA policy with which state law could conflict."); *Wright v. General Mills, Inc.*, 2009 WL 3247148, at *3 (S.D. Cal. Sept. 30, 2009) ("Because the

13

FDA has deferred taking regulatory action with respect to the term 'natural,' plaintiff's state law claims do not stand as an obstacle to accomplishing Congress's objectives of uniformity and consistency in regulating labeling.").

Last, to the extent Blue Diamond is claiming that field preemption is applicable, thus barring Vass's "All Natural" claims, Defendant is incorrect. "[T]he preempting statute—the Nutrition Labeling and Education Act of 1990, Pub.L. No. 101–535, 104 Stat. 2353—disclaims federal occupation of the field. Section 6(c)(1), 104 Stat. 2364, says the Act 'shall not be construed to preempt any provision of State law, unless such provision is expressly preempted under section 403A of the Federal Food, Drug, and Cosmetic Act.'" *Turek v. General Mills, Inc.*, 662 F.3d 423, 425 (7th Cir. 2011); *Sciortino v. Pepsico, Inc.*, - F. Supp.3d -, 2015 WL 3544522, at *10 (N.D. Cal. June 5, 2015) ("The NLEA makes clear, however, that the NLEA does not occupy the field."); *Lockwood v. Conagra Foods, Inc.*, 597 F. Supp.2d 1028, 1032 (N.D. Cal. 2009) ("Congress has explicitly stated that it does not intend to occupy the field of food and beverage nutritional labeling; instead, it permits states to regulate subject matters covered by the NLEA and its regulations provided that such state laws do not fall within the FDCA's express preemption provisions."); *Wright*, 2009 WL 3247148, at *2.

In sum, for the reasons stated, the motion to dismiss Plaintiff's "All Natural"

state law claims on the grounds of preemption should be denied.

*Standing*

Blue Diamond argues that Vass does not have standing to challenge products that he did not purchase, to wit, the Substantially Similar Products.   Reviewing Supreme Court precedent, the First Circuit has explained:

> Our judicial power is limited by Article III of the Constitution to actual cases and controversies. *See Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed.2d 343 (1975).   'One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue.' *See Blum v. Holder*, 744 F.3d 790, 795 (1st Cir.2014) (quoting *Clapper v. Amnesty Intel USA*, - U.S. -, 133 S. Ct. 1138, 1146, 185 L. Ed.2d 264 (2013)) (internal quotation marks omitted). . . .
>
> To satisfy this standing requirement, a plaintiff must sufficiently plead three elements: injury in fact, traceability, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S. Ct. 2130, 119 L. Ed.2d 351 (1992).

*Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014).  Defendant contends that Plaintiff "cannot be injured by products he never purchased." (#24 at 18.)  In other words, the argument is that Vass has not suffered an "injury in fact," that being "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Kerin*, 770 F.3d at 981 internal citations and quotation marks omitted).

Courts have dealt with this issue of a plaintiff's standing to sue for products not

personally purchased in different ways. *Mednick v. Precor*, Inc., 2014 WL 6474915, at *3 (N.D. Ill. Nov. 13, 2014) ("There is no uniformity across the country on the issue of standing for claims related to unpurchased products."); *Quinn v. Walgreen Co.*, 958 F. Supp.2d 533, 541-542 (S.D. N.Y. 2013) . Some courts hold that the question is best decided in the context of a motion for class certification rather than a motion to dismiss. *See*, e.g., *In re Adobe Systems, Inc. Privacy Litigation*, 66 F. Supp.3d 1197, 1228 (N.D. Cal. 2014) ("Some courts reserve the question of whether plaintiffs may assert claims based on products they did not buy until ruling on a motion for class certification.") (citing cases); *Dorsey v. Rockhard Laboratories, LLC*, 2014 WL 4678969, at *4 (C.D. Cal. Sept. 19, 2014) ("The Court will revisit this issue at the class certification stage in determining whether a class can be certified and, if so, the contours of that class."). Other courts have determined as a matter of law that plaintiffs do not have standing to bring claims for unpurchased products. *See*, e.g., *Murray v. Sears, Roebuck and Co.*, 2014 WL 563264, at *9 (N.D. Cal. Feb. 12, 2014) ("A plaintiff therefore may not represent a class in bringing CLRA claims based on products that he or she never purchased."); *Granfield v. NVIDIA Corp.*, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("[W]hen a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing.") (citing cases). The

majority view is "that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Quinn*, 958 F. Supp.2d at 541 (internal quotation marks and citation omitted); *Davidson v. Kimberly-Clark Corporation*, 2014 WL 3919857, at *6 (N.D. Cal. Aug. 8, 2014) (citing cases).

In his amended complaint, Vass alleges that the Substantially Similar Products are all Blue Diamond Almond Milk products labeled "All Natural" despite containing artificial or synthetic ingredients. (#7 ¶¶ 4, 73, 74.)  Each of the Substantially Similar Products is specifically identified. (#7 ¶ 4(B).)  The Substantially Similar Products were sold during the class period as defined, and each "make the same label misrepresentations as the Purchased Product." (#7 ¶¶ 3, 4, 73, 74.)  In sum, the Purchased Product and the Substantially Similar Products are the same in nature, i.e., Blue Diamond Almond milk products, have many of the same ingredients including almond milk, and all are labeled "All Natural" when they purportedly are not.

Applying the substantial similarity test employed by the majority of courts, the allegations of the amended complaint demonstrate sufficient similarity between the Purchased Product and the Substantially Similar Products that Vass has standing to assert claims based on products he did not purchase.  *See*, e.g., *Figy v. Frito-Lay North America, Inc.*, 67 F. Supp.3d 1075, 1084 (N.D. Cal. 2014); *Colucci v. ZonePerfect*

17

*Nutrition Co.*, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012) ("[T]he critical inquiry seems to be whether there is sufficient similarity between the products purchased and not purchased. Factors that other courts have considered include whether the challenged products are of the same kind, whether they are comprised of largely the same ingredients, and whether each of the challenged products bears the same alleged mislabeling." (internal citation, quotation marks and footnote omitted)). The motion to dismiss the claims with respect to the Substantially Similar Products should, therefore, be denied.

## C. The Law - Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must

provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

D. Discussion

*Count I - Violation of Mass. Gen. L. c. 93A*

Defendant seeks dismissal of the Chapter 93A claim on several grounds.[5] Blue

---

[5]      Defendant's third argument (#24 at 22-23) need not be addressed as it relates only to the "evaporated cane juice" claims which have been withdrawn.

Diamond first argues that Count I should be dismissed because Vass has not alleged actual damages. Defendant relies on the decision in *Rule v. Fort Dodge Animal Health, Inc*., where, after surveying Massachusetts decisions, the First Circuit concluded that "the most recent SJC cases in point appear to have returned to the notion that injury under chapter 93A means economic injury in the traditional sense." 607 F.3d 250, 255 (1st Cir. 2010). The *Rule* decision is viewed as "stand[ing] for the proposition that overpayment for a product is not a recoverable injury where the plaintiff no longer has the product in her possession and did not suffer physical injury or property damage because of the product." *Martin v. Mead Johnson Nutrition Co.*, 2010 WL 3928707, at *1 (D. Mass. Sept. 30, 2010) (citation omitted). Because, in Defendant's view, Vass "cannot meet the *Rule* injury requirement," the Chapter 93A claim is said to be doomed.

The issue is not as clear as Blue Diamond would have it. In a more recent case, the Massachusetts Supreme Judicial Court reiterated that:

> Where a defendant's unfair or deceptive conduct causes customers to receive a product or service worth less than the one for which the customers paid, the customers may pursue a class action under G.L. c. 93A to recover the amount by which they overpaid. *See Iannacchino v. Ford Motor Co.*, 451 Mass. 623, 630–631, 888 N.E.2d 879 (2008) (purchasers of motor vehicles could potentially certify class to recover overpayment for vehicles that unfairly or deceptively did not meet regulatory safety standards); *Aspinall v. Philip Morris Cos.*, 442 Mass. 381, 397–399,

20

> 813 N.E.2d 476 (2004) (purchasers of light cigarettes could
> pursue class to recover difference between market price of
> cigarettes as sold and true market value of such cigarettes
> had they not been deceptively advertised).

*Bellermann v. Fitchburg Gas and Elec. Light Co.*,  470 Mass. 43, 54 (2014); *see also*

*Martin*, 2010 WL 3928707, at *1 ("The Massachusetts Supreme Judicial Court ("SJC")

held that the overpayment was recoverable economic injury under Chapter 93A if the

advertisement was proven to be false."). This is precisely the claim being advanced

by Vass.  In light of this case law, Plaintiff has alleged a plausible claim. The Chapter

93A claim should not be dismissed for failure to allege actual damages.

Next, Blue Diamond asserts that Vass has failed to plead his Chapter 93A claim

with the requisite particularity.  Plaintiff does not contest that the "heightened

pleading" requirements of Fed. R. Civ. P. 9(b) apply to the fraud allegations in his

Chapter 93A claim. *Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 58 (1st Cir.

2013).  As limned by the First Circuit:

> Rule 9(b) requires that '[i]n alleging fraud or mistake,
> a party must state with particularity the circumstances
> constituting fraud or mistake.' This standard 'means that a
> complaint must specify "the time, place, and content of an
> alleged false representation."' [*U.S. ex rel.] Rost* [*v. Pfizer,
> Inc.*], 507 F.3d [720] at 731 [(1st Cir. 2007)] (quoting *Doyle
> v. Hasbro, Inc.*, 103 F.3d 186, 194 (1st Cir.1996)); *see also
> Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d
> 23, 29 (1st Cir. 2004) (noting that Rule 9(b) requires the
> pleader 'to specify the who, what, where, and when of the
> allegedly false or fraudulent representation'). 'Conclusory

> allegations . . . are not sufficient' to satisfy Rule 9(b). *Rost*,
> 507 F.3d at 731.

*U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 45 (1st Cir. 2009).

While Vass alleges that there is one Purchased Product, Blue Diamond's Almond Breeze Shelf Stable Chocolate Almond Milk, that he purchased in Massachusetts within the four years prior to the institution of this litigation (#7 ¶¶ 14, 51), these allegations are rather general in nature.  How many times did he buy the Purchased Product?  From what retailer?  Where in Massachusetts were the retailers located?  Copies of the label (front, back and side) of the Purchased Product are incorporated into the Amended Complaint. (#7 ¶ 55.)  Plaintiff has detailed the language in the label alleged to be unlawful and misleading and why the language is purportedly unlawful and misleading. (#7 ¶¶ 56, 57, 59.)  Vass asserts that he "cares about the nutritional content of food" and that he read and reasonably relied upon the label on the Purchased Product when buying it. (#7 ¶¶ 66, 67.)  While Plaintiff alleges Defendant made "unlawful health claims on its website regarding the Purchased Product" (#7 ¶¶ 13(c), 51, 59) as well as "in its advertising" (#7 ¶ 51), he has not alleged that he actually visited the website and, if he did, when and how often.  Vass has offered no detail at all regarding advertising: When did he see it?  In what publications? What did it say?

In short, Plaintiff has not pleaded the fraud-based allegations in his Chapter 93A

claim with sufficient particularity to comport with Rule 9(b). That having been said, while the motion to dismiss those allegations should be allowed, Vass should be afforded the opportunity to amend his complaint to address the deficiencies.

*Count II - Violation of Mass. Gen. L. c. 94 §§ 187 and 190 and 105 CMR 520.116*

As noted earlier, Count II should be dismissed because it is undisputed that the statutes and regulation alleged to have been violated do not provide a private right of enforcement.

*Count III - Breach of Implied Warranty of Merchantability*

The Massachusetts Uniform Commercial Code addressing the implied warranty of merchantability provides, in relevant part:

> (1) Unless excluded or modified by section 2-316, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> (2) Goods to be merchantable must at least be such as
> *****
> (c) are fit for the ordinary purposes for which such goods are used; and
> *****
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
>
> (f) conform to the promises or affirmations of fact made on the container or label if any.

Mass. Gen. L. c. 106 § 2-314.

Blue Diamond contends that Plaintiff's breach of the implied warranty of merchantability claim must fail because its products were "fit for the ordinary purpose for which they were intended - namely, consumption." (#24 at 23.)  In other words, Defendant argues that its Blue Diamond almond milk products comply with Mass. Gen. L. c. 106 § 2-314(c).

In his amended complaint, Vass alleges "the Defendant's misbranded food products failed to conform to the promises or affirmations of fact made on the container or label of these products . . . [s]pecifically, the products contained false 'all natural' labeling statements on the labels." (#7 ¶ 15.)  In other words, Plaintiff is alleging violation of Mass. Gen. L. c. 106 § 2-314(e) and(f).

Subsections (e) and (f) plainly mean something different from, or more than, subsection (a), or the provisions would be superfluous in the statute.  Vass clearly contends that the Blue Diamond almond milk products failed to conform to the "all natural" label on the container.  On its face the claim falls within the scope of Mass. Gen. L. c. 106 § 2-314(e) and(f) and so should not be dismissed.  *See In re ConAgra Foods Inc.*, 908 F. Supp.2d 1090, 1112 (C.D. Cal. 2012).

*Count IV - Breach of Express Warranty*

No argument is made that the "all natural" part of Count IV should be dismissed.

Rather, Defendant seeks dismissal on Count IV only as it relates to an express warranty regarding evaporated cane juice (#24 at 24-25) and, as noted, this claim has been withdrawn.

*Count V - Negligent Misrepresentation*[6]

Under Massachusetts law,

> To prove the tort of negligent misrepresentation, a plaintiff must establish that the defendant, (1) in the course of her business, or in a transaction in which she had a pecuniary interest, (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance on the information, and that she (6) failed to exercise reasonable care or competence in obtaining or communicating the information.

*DeWolfe v. Hingham Centre, Ltd.,* 464 Mass. 795, 799-800 (2013) (citations omitted); *Edlow v. RBW, LLC*, 688 F.3d 26, 36-37 (1st Cir. 2012) ("In Massachusetts, proof of misrepresentation requires that a plaintiff show a false statement of material fact made

---

[6] Unlike a negligence claim, "an exception to the economic loss doctrine . . . permits recovery for financial harm resulting from negligent misrepresentation." *Cumis Ins. Society, Inc. v. BJ's Wholesale Club, Inc.*, 455 Mass. 458, 472 n. 22 (2009) (internal citations omitted); *Softub, Inc. v. Mundial, Inc.*, 53 F. Supp.3d 235, 260 (D. Mass. 2014) ("Claims for intentional and negligent misrepresentation are not governed by the economic loss doctrine."); *Passatempo v. McMenimen*, 461 Mass. 279, 302 (2012) ("Even were we to assume that the [economic loss] doctrine could apply to damages assessed for intentional conduct, it nonetheless does not apply to 'pecuniary loss incurred as a result of an actionable misrepresentation.' See *Nota Constr. Corp. v. Keyes Assocs., Inc.*, 45 Mass. App. Ct. 15, 20–21 n. 1, 694 N.E.2d 401 (1998).").

to induce the plaintiff to act and reliance on the false statement by the plaintiff to his detriment.  Furthermore, a plaintiff must show reasonable or justifiable reliance on the allegedly injurious representation." (internal citations and quotation marks omitted)); *Stokes v. Wells Fargo Bank, N.A.*, 37 F. Supp.3d 525, 535 (D. Mass. 2014).  Blue Diamond's argument in seeking dismissal of this claim is limited to Plaintiff's purported failure to allege facts to show "that he actually or reasonably relied on the 'evaporated cane juice' labeling statement." (#24 at 25 referring to argument in Section III.D.1.c at 22-23.)  Since the evaporated cane juice claim has been withdrawn, the motion to dismiss Count V should be denied as moot.

*Count VI - Negligence*

Defendant asserts that the negligence claim alleged in Count VI of the amended complaint is barred by the economic loss rule.  Under Massachusetts law, the economic loss rule

> establishes limitations on damages a plaintiff may plead and recover in a negligence action. It ensures that, "[i]n the absence of personal injury or physical damage to property [beyond the defective product itself], the negligent supplier of a defective product is not ordinarily liable in tort for simple economic loss." *Berish v. Bornstein*, 437 Mass. 252, 267, 770 N.E.2d 961 (2002). See *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395, 613 N.E.2d 902 (1993) ("purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage"). 'Economic loss includes "damages for inadequate value, costs of repair and replacement of the

> defective product or consequent loss of profits without any claim of personal injury or damage to other property.'" *Berish*, *supra*, quoting *Marcil v. John Deere Indus. Equip. Co.*, 9 Mass. App. Ct. 625, 630 n. 3, 403 N.E.2d 430 (1980). Essentially, where the negligent design or construction of a product leads to damage only to the product itself, the recovery for economic loss is in contract, and the economic loss rule bars recovery in tort.

*Wyman v. Ayer Properties, LLC*, 469 Mass. 64, 69 (2014).   Vass has offered nothing to dispute the argument that the economic loss doctrine forecloses his negligence claim.   Count VI should be dismissed.

*Count VII - Unjust Enrichment*

The elements of an unjust enrichment claim are familiar. "To succeed with an unjust enrichment claim under Massachusetts law, a plaintiff must show that the defendant received, was aware of, and accepted or retained a benefit conferred by the plaintiff under circumstances which make such acceptance or retention inequitable." *Lass v. Bank of America, N.A.*,  695 F.3d 129, 140 (1st Cir. 2012) (internal citation and quotation marks omitted); *Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009) (interpreting Massachusetts law).   In seeking dismissal, Defendant contends that although Vass has alleged that he "paid an unwarranted premium" for the Purchased Product (#7 ¶101) and that Blue Diamond "was enriched at the expense of Plaintiff and the Class through the payment of the purchase price for Blue Diamond Almond milk products" (#7 ¶ 202), Plaintiff has not

27

sufficiently alleged that it was Blue Diamond rather than the retailer from whom he bought the Purchased Product that was enriched by the premium paid.

While recognizing that there is not a consensus on this point, a number of courts have rejected the contention that "Defendants can insulate themselves from liability on an unjust enrichment claim simply by asserting that retail sales by [] stores cut off any relationship between the consumers and the manufacturer." *Stewart v. Beam Global Spirits & Wine, Inc.*, 877 F. Supp.2d 192, 200 (D. N.J. 2012) (citing cases); *Lynch v. Tropicana Products, Inc.*, 2013 WL 2645050, at \*10 (D. N.J. June 12, 2013).  Following the reasoning of this line of cases, just because Vass paid the premium price to a retailer does not mean that a benefit was not conferred upon Blue Diamond.  Based on the facts alleged in the amended complaint, Plaintiff's unjust enrichment claim is plausible.

Blue Diamond also challenges the viability of the unjust enrichment claim by arguing that Vass has an adequate remedy of law consequent to his Chapter 93A claim.  There is a split of authority in the district court on the question "as to whether unjust enrichment claims should be dismissed because of corresponding claims at law." *Depianti v. Jan-Pro Franchising Intern., Inc.*, 39 F. Supp.3d 112, 143 n.14 (D. Mass. 2014) (citing cases); *Diviacchi v. Affinion Group, Inc.*, 2015 WL 3631605, at \*17 n.15 (D. Mass. Mar. 11, 2015), *Report and Recommendation adopted by* 2015

WL 3633522 (D. Mass. Jun. 4, 2015). However, the First Circuit has noted that while "damages for breach of contract [a claim at law] and unjust enrichment are mutually exclusive, it is accepted practice to pursue both theories at the pleading stage." *Lass*, 695 F.3d at 140 (internal citations omitted); *Cooper v. Charter Communications Entertainments I, LLC*, 760 F.3d 103, 112-113 (1st Cir. 2014) ("[I]t is generally permissible to pursue alternative theories at the pleading stage."). Because Vass may properly plead in the alternative, the motion to dismiss Count VII should be denied. *See Diviacchi*, 2015 WL 3633522, at *1.

### Count VIII - Money Had and Received

As explained by the First Circuit, the claims of money had and received and unjust enrichment are

> 'very close in character—one rooted in common law and the other equity jurisprudence.' *Jelmoli Holding, Inc. v. Raymond James Fin. Servs., Inc.*, 470 F.3d 14, 21 (1st Cir. 2006). Their elements are as follows: 'Money had and received is based on money, or its equivalent, which in equity and good conscience should be returned to the claimant and is often styled as money that should be returned where one is unjustly enriched at another's expense. Unjust enrichment is an equitable claim with the same elements save that it is not limited to enrichment by money, or its equivalent.' *Id.* at 17 n. 2 (internal citations and quotation marks omitted).

*Cooper*, 760 F.3d at 112; *Reed v. Zipcar, Inc.*, 527 Fed. Appx. 20, 24 (1st Cir. 2013) ("the claim of money had and received is simply a narrower form of an unjust

enrichment, limited to wrongs arising from money changing hands"). In the amended complaint Vass alleges that Blue Diamond received money from Plaintiff and members of the class (#7 ¶ 209), but that Defendant's products for which the Plaintiff and the class members paid money were misbranded, illegal and worthless. (#7 ¶ 207.) Defendant is said to have benefitted from receipt of the money (#7 ¶ 210), and Plaintiff alleges that Blue Diamond should not be permitted to keep the money. (#7 ¶ 211.) Having concluded that Vass has stated an unjust enrichment claim, the narrower claim alleged in Count VIII for money had and received should likewise survive the legal challenge at this initial stage of the litigation. *See Diviacchi*, 2015 WL 3633522, at *1.

### E. Conclusion And Recommendation

For all of the reasons stated, I RECOMMEND that Defendant Blue Diamond Growers' Motion To Dismiss Amended Class Action Complaint (#23) be DENIED AS MOOT with respect to the "evaporated cane juice" claims. I FURTHER RECOMMEND that the motion to dismiss be ALLOWED with respect to the fraud allegations in Count I, Count II and Count VI, and otherwise, DENIED. I FURTHER RECOMMEND that Plaintiff be granted leave to amend his complaint to plead the fraud allegations in Count I with particularity consistent with Rule 9(b).

## F. <u>Review By District Judge</u>

The parties are hereby advised that any party who objects to this recommendation must file specific written objections with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation. The objections must specifically identify the portion of the recommendation to which objections are made and state the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed. R. Civ. P., shall preclude further appellate review. *See Keating v. Secretary of Health & Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

/s / M. Page Kelley
M. Page Kelley
United States Magistrate Judge

August 11, 2015