Erica C. Mirabella
MIRABELLA LAW, LLC
132 Boylston Street, 5th Floor
Boston, MA 02116
(617) 580-8270
(617) 583-1905 (fax)
erica@mirabellaLLC.com

*Counsel for Plaintiff*
[Additional Counsel listed on signature page]

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-----------------------------------------------------------x

CASLEY VASS, individually, and on behalf of
all others similarly situated,

:

                Plaintiff,                    **SECOND AMENDED CLASS**
                                :           **ACTION COMPLAINT**

        -vs.-

                                :

BLUE DIAMOND GROWERS,

                                      **JURY TRIAL DEMANDED**

                Defendant.     :

-----------------------------------------------------------x

Plaintiff Casley Vass ("Plaintiff"), individually and on behalf of similarly situated persons, alleges the following against Defendant Blue Diamond Growers ("Blue Diamond" or "Defendant") as to his own acts upon personal knowledge, and as to all other matters upon information and belief.

**PRELIMINARY STATEMENT**

Blue Diamond, a well-known producer of almond products, deceived its customers into believing that its products are natural. In reality, Blue Diamond products contain artificial ingredients and synthetic additives. Blue Diamond violated, and continues to violate, federal and state laws specifically prohibiting misbranding of packaged food products.

## I.     DEFINITIONS

1.      "Class Period" is September 1, 2010 to the date of notice to the class.

2.      "Purchased Product" is Blue Diamond's Almond Breeze Shelf Stable Chocolate Almond Milk that was purchased by Plaintiff during the Class Period. Pictures of the Purchased Product along with specific descriptions of the labels are included within Section VIII.

3.      "Substantially Similar Products" are the Blue Diamond almond milk products listed in Paragraph 4. Each of these products: (i) make the same label misrepresentations, as described herein, as the Purchased Product and (ii) violate the same food labeling regulations of Massachusetts, as described herein.

4.      Upon information and belief, these Substantially Similar Products are the Blue Diamond almond milk products, sold during the class period, listed below. Plaintiff reserves the right to supplement this list if evidence is adduced during discovery to show that other Blue Diamond almond milk products had labels that violate the same provisions of Massachusetts law and have the same label misrepresentations as the Purchased Product:

- Almond Breeze Shelf Stable Original Almond Milk;
- Almond Breeze Shelf Stable Vanilla Almond Milk;
- Almond Breeze Shelf Stable Chocolate Almond Milk;
- Almond Breeze Shelf Stable Almond Coconut Original;
- Almond Breeze Refrigerated Original Almond Milk;
- Almond Breeze Refrigerated Vanilla Almond Milk;
- Almond Breeze Refrigerated Chocolate Almond Milk;
- Almond Breeze Shelf Stable Almond Coconut Vanilla Almond Milk;
- Almond Breeze Refrigerated Almond Coconut Original Almond Milk;
- Almond Breeze Refrigerated Original Almond Milk, 96 ounce container;
- Almond Breeze Shelf Stable Original Almond Milk, 11 ounce single serve;
- Almond Breeze Original Unsweetened Refrigerated Almond Milk;
- Almond Breeze Shelf Stable Original Unsweetened Almond Milk;
- Almond Breeze Refrigerated Almond Coconut Original Unsweetened Almond Milk;
- Almond Breeze Shelf Stable Almond Coconut Vanilla Unsweetened Almond; Milk;
- Almond Breeze Vanilla Unsweetened Refrigerated Almond Milk;
- Almond Breeze Shelf Stable Chocolate Unsweetened Almond Milk; and
- Almond Breeze Shelf Stable Vanilla Unsweetened Almond Milk.

## II.     SUMMARY OF THE CASE

5.      Plaintiff's case has two facets. The first part concerns Blue Diamond's unlawful sale and misbranding of its products. Purchasing or possessing misbranded food is a criminal act in Massachusetts. This "misbranding" and unlawful sale gives rise to the first aspect of Plaintiff's case under Massachusetts law. This aspect of the Plaintiff's case is brought under 105 CMR 520.116(A)(1), (C), which makes it illegal to sell, advertise, distribute for sale, traffic, trade, transportation, display for sale, offer for sale, deliver for sale, intend to sell any food products as "natural," or with words of similar meaning, unless such food complies with the State of Massachusetts' definition of natural food. A food that is impermissibly sold as "natural" is misbranded. 105 CMR 520.116(C); ALM GL ch. 94 § 187. Plaintiff also brings this portion of his case under Massachusetts ALM GL ch. 94 §§ 187 and 190, which prohibits the manufacture, sale, delivery or offer of delivery of misbranded food, including food whose label is false and misleading in any particular or which fails to disclose all ingredients by their common or usual name. Plaintiff alleges that Defendant packages and labels the Purchased Product and Substantially Similarly Products in violation of the Massachusetts statutes set forth above.

6.      The second aspect to this case concerns Blue Diamond's deceptive practices. The labels on the Purchased Product and the Substantially Similar Products are misleading, deceptive, unfair, and fraudulent. Plaintiff reviewed the labeling on the Purchased Product, and reasonably relied in substantial part on the labeling, and the "All Natural" representation thereon, in deciding to purchase this product. Had he known the truth about the Purchased Product, he would not have purchased it.  Moreover, the very fact that Defendant sold the Purchased Product and Substantially Similar Products without disclosing their actual ingredients is a deceptive act in and of itself. Plaintiff would not have purchased a product that is illegal to sell.

7.      Plaintiff did not know, and had no reason to know, that Defendant's Purchased Product was misbranded under Massachusetts law. Similarly, Plaintiff did not know, and had no reason to know, that the labels of Defendant's Purchased Product were false and misleading.

8.      In order to remedy the harm arising from Defendant's illegal conduct, Plaintiff

brings this action on behalf of the following Class: "All persons in Massachusetts who, from September 11, 2010, until the date of notice, purchased almond milk products manufactured, distributed and/or sold by Blue Diamond Growers containing the label statement "All Natural" (the "Class").

### III.    BACKGROUND

9.      Identical Massachusetts and federal laws regulate the content of labels on packaged food. Under both Massachusetts law and the Food and Drug Cosmetic Act ("FDCA"), § 403(a), a food is "misbranded" if "its labeling is false or misleading in any particular," or if it does not contain certain information on its label or its labeling. 21 U.S.C. § 343(a); Massachusetts ALM GL ch. 94 § 187.

10.     Under the FDCA, the term "false" has its usual meaning of "untruthful." But the term "misleading" is a term of art. Misbranding reaches not only false claims, but also those claims that might be technically true, but still misleading. If one representation in the label is misleading, the entire food is misbranded. Nor can any statement in the label cure a misleading statement.

11.     Under Massachusetts law, a food product that is "misbranded" is not merchantable and has no economic value. Plaintiff and members of the Class paid an unwarranted premium for these worthless products.

12.     Plaintiff brings this action under Massachusetts law, which is identical to federal law, for a number of the Defendant's food labeling practices. These practices are both (i) unlawful and (ii) deceptive and misleading to consumers. They include representing food products to be "all natural," when they contain artificial ingredients and synthetic additives.

### IV.    PARTIES

13.     Plaintiff Casley Vass is a resident of Boston, Massachusetts, who purchased the Blue Diamond Purchased Product in Massachusetts within the four years preceding the filing of this action. Specifically, he purchased the Purchased Product at Wholefood, Charles River Plaza, 181 Cambridge St, Boston, MA 02114, on a weekly basis during the relevant period.

14.     Defendant Blue Diamond Growers is a California corporation with its principal place of business in Sacramento, California.

15.     Defendant is a leading producer of retail food products, including the Purchased Product and Substantially Similar Products. Defendant sells its food products to consumers through grocery and other retail stores throughout Massachusetts.

16.     Massachusetts law applies to all claims set forth in this Complaint because Plaintiff lives in Massachusetts and purchased the Purchased Product there. Also, the Defendant sold its products throughout Massachusetts and availed itself of business opportunities in this state. All of the misconduct alleged herein was contrived in, implemented in, and has a shared nexus with Massachusetts. The formulation and execution of the unlawful practices alleged herein, occurred in, or emanated from Massachusetts.

17.     Accordingly, Massachusetts has significant contacts and/or a significant aggregation of contacts with the claims asserted by Plaintiff and all Class members.

## V.     JURISDICTION AND VENUE

18.     This Court has jurisdiction over this action under 28 U.S.C. § 1332(d), because this is a class action in which: (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; (2) members of the proposed class are citizens of a State different from a defendant; and (3) the number of members of the class is greater than 100.

19.     Because a substantial portion of the wrongdoing alleged herein occurred in Massachusetts, the Court has personal jurisdiction over Defendant. Defendant also has sufficient minimum contacts with Massachusetts and has otherwise intentionally availed itself of the markets in Massachusetts through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

20.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (3), because: (1) a substantial part of the events or omissions giving rise to these claims occurred in this District, (2) a substantial part of the property that is the subject of this action is situated in this District,

and (3) Defendant are subject to the Court's personal jurisdiction with respect to this action.

## VI.    FACTUAL ALLEGATIONS

### A.    Identical Massachusetts and Federal Laws Regulate Food Labeling

21.    Food manufacturers are required to comply with identical state and federal laws and regulations that govern the labeling of food products. First and foremost among these is the FDCA and its labeling regulations, including those set forth in 21 C.F.R. § 101.

22.    Pursuant to Massachusetts law, Massachusetts has expressly adopted the federal labeling requirements.

23.    Massachusetts requires that all packaged food be labeled in compliance with applicable law, including all labeling requirements contained in 21 C.F.R. Part 101 - Food Labeling. 105 CMR 590.001; 105 CMR 590.004(B); Massachusetts Food Code § 3-201.11. Massachusetts requires this "to safeguard public health and provide to consumers food that is safe, unadulterated, and honestly presented." 105 CMR 590.001; 105 CMR 590.002; Massachusetts Food Code § 3-101.11. Massachusetts mandates that "[f]ood shall be safe, unadulterated, and, as specified under [FC] § 3-601.12, honestly presented." Massachusetts Food Code § 3-101.11; 105 CMR 590.001. Massachusetts Food Code § 3-601.12 provides that "[f]ood shall be offered for human consumption in a way that does not mislead or misinform the consumer." Massachusetts Food Code § 3-601.12; 105 CMR 590.001.

24.    In addition to its blanket adoption of federal labeling requirements, Massachusetts has also enacted a number of laws and regulations that parallel federal food laws and regulations and impose identical requirements. *See*, for example, Massachusetts ALM GL ch. 94 § 187 (food is misbranded if (1) its label is false and misleading in any particular or (2) its label fails to disclose ingredients by their common and usual name or (3) if words, statements, or other information required by Massachusetts law is either missing or not sufficiently conspicuous).

### B.    FDA Enforcement History

25.    In October 2009, FDA issued a "Guidance for Industry: Letter regarding Point Of Purchase Food Labeling." In March 2010, FDA issued "Open Letter to Industry from [FDA

Commissioner] Dr. Hamburg." These documents placed the industry on notice that food labeling compliance was an area of enforcement priority. Additionally, FDA has sent warning letters to the industry, including many of Defendant's peer food manufacturers, for the same types of misbranded labels and deceptive labeling claims described herein.

26.     Defendant saw, or should have seen, these warning letters. Defendant did not change the labels in response to the warning letters sent to other companies.

## VII.    OVERVIEW OF APPLICABLE MASSACHUSETTS LAW VIOLATIONS

27.     The Purchased Product is misbranded with an unlawful "all natural" label.

28.     Defendant's use of "all natural" claims on products containing unnatural artificial ingredients, such as synthetic additives, are "false and misleading," in violation of Massachusetts ALM GL ch. 94 § 187. Massachusetts ALM GL ch. 94 § 187 is identical to the prohibition in 21 U.S.C. § 343(a) against labeling that is "false or misleading in any particular."

29.      FDA has repeatedly stated that its policy to restrict the use of the term "natural" in connection with artificial ingredients and synthetic substances.

30.     FDA has also repeatedly affirmed that a food is "natural" only if no unexpected artificial or synthetic ingredient (including all color additives regardless of source) has been included in, or has been added to, that food. *See* 58 FR 2302, 2407, January 6, 1993.

31.     FDA has sent out numerous warning letters concerning this issue. Defendant is aware of these FDA warning letters.

32.     Defendant has nonetheless unlawfully labeled food products, including both the Purchased Product and Substantially Similar Products, as "all natural." In reality, they contain artificial ingredients and synthetic additives.

33.     Such false and misleading labeling also violates various provisions of the Massachusetts Food Code.

34.     Under 105 CMR 520.116(A)(1), (C), it is illegal to sell, advertise, distribute for sale, traffic, trade, transportation, display for sale, offer for sale, deliver for sale, intend to sell any food products as "natural," or with words of similar meaning, unless such food complies

with the State off Massachusetts definition of natural food. Such improper labeling renders the food being misbranded. 105 CMR 520.116(C); ALM GL ch. 94 § 187. Under 105 CMR 520.116(A)(2), "'Natural food' means food which in its processing has not been treated with preservatives, antibiotics, synthetic additives, artificial flavoring, artificial coloring, or has been processed in such a manner so that it become significantly less nutritive. Natural foods may only be processed by extracting, purifying, heating, fermenting, concentrating, dehydrating, cooling, or freezing."

35.     By falsely representing that Blue Diamond almond milk products were "all natural," Defendant violated 105 CMR 520.116.

36.     A reasonable consumer would expect that when Defendant labels its products as "all natural," the products' ingredients are "natural" as defined by the State of Massachusetts and the federal government and its agencies. A reasonable consumer would also expect that when Defendant labels its products as "all natural," the products' ingredients are "natural" according to the common use of that word. A reasonable consumer would understand that such "all natural" products contain no synthetic, artificial, or excessively processed ingredients.

37.     Consumers who purchase products labeled "all natural" often would not do so were these products not labeled as such.

38.     Consumers are thus misled into purchasing Defendant's products with synthetic additives and unnatural artificial ingredients that are not "all natural" as falsely represented on its labeling.

39.     Defendant's products in this respect are both unlawful (being misbranded under Massachusetts law) and misleading and deceptive.

## VIII.   THE PURCHASED PRODUCT (1) UNLAWFULLY VIOLATES MASSACHUSETTS LAW AND (2) IS MISLEADING AND DECEPTIVE

40.     There is one (1) Purchased Product, Blue Diamond's Almond Breeze Shelf Stable Chocolate Almond Milk. Plaintiff purchased the Purchased Product during the Class Period. Specifically, he purchased the Purchased Product at Whole Foods, Charles River Plaza, 181

Cambridge St, Boston, MA 02114, on a weekly basis during the relevant period.

41.     The Purchased Product has a label that violates Massachusetts law and is therefore misbranded and may not be sold or purchased.

42.     The label (front, back and side) of the package of the Purchased Product purchased by Plaintiff is as follows:







43.   The following unlawful and misleading language appears on the label:

"All Natural"

* * *

"Almond Breeze® Almondmilk is an all natural, great tasting NON-DAIRY

BEVERAGE."

      * * *

"All Natural with added Vitamins and Minerals."

44.     Plaintiff reasonably relied on these label representations in paragraphs 42 and 43

and based and justified his decision to purchase the product, in substantial part, on these label

misrepresentations.

45.     The Purchased Product is unlawful, misbranded, and violates Massachusetts law,

including Massachusetts ALM GL ch. 94 § 187 and 105 CMR 520.116, as well as the guidance,

regulations and statutes listed in Section VII (A) by falsely identifying the product as "all

natural." In reality, this product contains the following artificial ingredients: cocoa (Dutch

process), potassium citrate, Vitamin A Palmitate, Vitamin D-2 and Vitamin D-Alpha-

Tocopherol. This product is also misleading and deceptive because the label uses the phrases

"[a]ll natural" on food that contains unnatural artificial ingredients and synthetic additives.

Therefore, it is not truly "all natural."

## IX.     DEFENDANT VIOLATED MASSACHUSETTS LAW BY MANUFACTURING, ADVERTISING, DISTRIBUTING AND SELLING MISBRANDED FOOD

46.     Defendant has violated Massachusetts 105 CMR 520.116, which makes it

unlawful to disseminate false or misleading food advertisements about the naturalness of a food

product. Specifically, this statute prohibits falsely claiming, that a product is "all natural" on

products and product packaging or labeling or any other medium used to directly or indirectly

induce the purchase of a food product.

47.     Defendant violated Massachusetts ALM GL ch. 94 § 187 because its product

labeling is false and misleading in one or more ways.

48.     Defendant violated Massachusetts ALM GL ch. 94 § 187 because its product

labeling failed to state the common or usual names of ingredients.

49.     Defendant violated Massachusetts ALM GL ch. 94 § 190, which makes it unlawful for any person to manufacture, sell, deliver, or offer for sale any food that is misbranded.

50.     Defendant violated the standards set by 21 C.F.R. § 101.4(a)(1), 21 C.F.R. § 102.5(a), 21 C.F.R. § 102.5(d), 21 C.F.R. § 120.1(a), 21 U.S.C. §343, and 21 C.F.R. § 101.30.

## X.     PLAINTIFF BOUGHT THE PURCHASED PRODUCTS

51.     Plaintiff cares about the nutritional content of food and seek to maintain a healthy diet.

52.     Plaintiff read and reasonably relied on Defendant's labeling and based and justified the decision to purchase Defendant's product, in substantial part, on the label and its "All Natural" representation.

53.     At point of sale, Plaintiff did not know, and had no reason to know, that the Purchased Product was unlawful and misbranded as set forth herein. Plaintiff would not have bought the product had he known the truth about it composition and ingredients and that the product was not merchantable and illegal to sell.

54.     After Plaintiff learned that Defendant's Purchased Product was falsely labeled, he stopped purchasing it.

55.     As a result of Defendant's unlawful misrepresentations, Plaintiff and thousands of others in Massachusetts purchased the Purchased Product and the Substantially Similar Products at issue.

56.     A reasonable person would also attach importance to whether Defendant's products are "misbranded" and whether they were merchantable, *i.e.*, legally salable and to Defendant's representations about these issues in determining whether to purchase the products at issue.

57.     Plaintiff's purchases of the Purchased Product damaged Plaintiff, because misbranded products cannot be legally sold and have no economic value.

## XI.     SUBSTANTIALLY SIMILAR PRODUCT CLAIMS

58.     Products which have the same claims and share the same label representations and Massachusetts law violations as the Purchased Product described herein are set forth in Paragraph 4.

59.     Defendant made the same false labeling claims on these products as on the Purchased Product. Such false statements and omissions violate federal and Massachusetts law and render these products illegally misbranded.

60.     These products cannot be lawfully manufactured, distributed, or sold to consumers.

61.      The FDCA, and regulations promulgated thereunder, bar food manufacturers and distributors like Defendant from selling misbranded and illegal products that contain labels that fail to accurately disclose the nature of their contents.

62.     Under both federal and Massachusetts law, it is illegal to manufacture, deliver, or sell misbranded food. See 21 U.S.C. § 331; Massachusetts ALM GL ch. 94 § 190.

63.     Because the manufacture and sale of Blue Diamond products violates the food labeling laws of Massachusetts, the actions of Defendant also constitute predicate acts under consumer protection laws of Massachusetts, including, Massachusetts ALM GL ch. 93A *et seq.*

## FACTS RELEVANT TO ALL CLAIMS

### Blue Diamond products are misbranded and illegal

64.     All containers of Blue Diamond almond milk listed in this Class Action Complaint are misbranded and illegal.

65.     Plaintiff Casley Vass purchased Blue Diamond Purchased Product in Boston, Massachusetts within the past four years. He purchased the product for himself and drank it regularly, believing it to be a natural and healthy beverage. However, he stopped purchasing and drinking Blue Diamond when he learned that it contains artificial ingredients.

66.     All containers of the Blue Diamond products listed Paragraph 4(B) above falsely state the almond milk they contain is "all natural."

67.     Plaintiff purchased Blue Diamond almond milk in Massachusetts in containers that included the unlawful statement that Blue Diamond almond milk was "all natural."

68.     This statement is false, misleading, and illegal.

69.     Violations of federal labeling requirements also result in violations of 105 CMR 590.001; 105 CMR 590.004(B); Massachusetts Food Code § 3-201.11, which mandate that packaged food comply with all applicable laws.

70.     Defendant has also violated 21 C.F.R. § 1.21 by, *inter alia*, failing to reveal material facts on the labels of Blue Diamond containers.

71.     Defendant has violated the requirements of Massachusetts ALM GL ch. 94 § 187; ALM GL ch. 94 § 190; 105 CMR 590.001; 105 CMR 590.002; 105 CMR 590.004(B); 105 CMR 520.104; 105 CMR 520.115; 105 CMR 520.116; Massachusetts Food Code § 3-101.11; Massachusetts Food Code § 3-201.11; and Massachusetts Food Code § 3-601.12.

72.     Defendant has violated Massachusetts ALM GL ch. 94 § 187 and ALM GL ch. 94 § 190, which make it unlawful to manufacture, sell, deliver, or offer to deliver any misbranded food.

73.     Based upon the facts set forth in this Complaint, Defendant has violated Massachusetts ALM GL ch. 94, §§ 187, 190; 105 CMR 520.104 and 105 CMR 520.115.

74.     Based upon the facts set forth in this Complaint, Defendant has violated Massachusetts ALM GL ch. 94 §§ 187, 190; 105 CMR 590.001, Massachusetts Food Code §§ 3-101.11; 3-601.12.

75.     Defendant has violated Massachusetts 105 CMR 520.116, which makes it unlawful to falsely represent food as natural when if it fails to meet Massachusetts' requirements for doing so.

76.     By falsely stating that Blue Diamond almond milk products were "all natural," Defendant violated 105 CMR 520.116.

77.     Significantly, under 21 U.S.C. § 333(a)(1) and the food labeling laws of Massachusetts, Defendant's violations of federal and state law are strict liability offenses for which no showing of intent to deceive or defraud is required.

78.     Under both the FDCA and the food labeling laws of Massachusetts, it is a strict liability offense to, *inter alia*, manufacture, sell, deliver, or offer to deliver any food that is misbranded.

79.     By manufacturing and selling misbranded products, Defendant has committed a predicate unlawful act, regardless of any misrepresentation or reliance thereon.

**Purchasers of Misbranded Products Have Been Injured**

80.     Had Plaintiff known that the Blue Diamond almond milk product he purchased was misbranded, Plaintiff would not have purchased them.

81.     Because Blue Diamond products are illegal and misbranded as described in this Complaint, they are economically worthless.

82.     Because Blue Diamond products are illegal and misbranded, they cannot be lawfully resold and are not merchantable.

83.     Plaintiff paid money for misbranded Blue Diamond products that were worth zero.

84.     Plaintiff could have purchased cheaper alternative products that were not illegal, misbranded, or worthless.

85.     Plaintiff paid an unwarranted premium for the Blue Diamond almond milk products he purchased over cheaper alternative products that were not illegal, misbranded, and worthless.

86.     Plaintiff relied to his detriment on the labels of the Blue Diamond almond milk products he purchased.

87.     Plaintiff's reliance was reasonable.

88.      A reasonable consumer would have been misled by the Defendant's actions.

89.     As a result of Defendant's unlawful misrepresentations, Plaintiff and millions of others in Massachusetts and throughout the United States purchased misbranded Blue Diamond almond milk products.

90.     Plaintiff and millions of others in Massachusetts and throughout the United States who purchased misbranded Blue Diamond almond milk products were injured as a result of Defendant's actions.

91.     Plaintiff and other purchasers of misbranded Blue Diamond almond milk products paid money for products that were worth zero.

92.     Plaintiff and other purchasers of misbranded Blue Diamond almond milk products paid money for products that were of a lesser value than represented by Defendant.

93.     Pursuant to Massachusetts ALM GL ch. 93A, on September 5, 2014, a written demand for relief, identifying the Plaintiff and the Class and reasonably describing the unfair or deceptive acts or practices relied upon and the injury suffered by Plaintiff and the Class, was mailed and delivered to Defendant.

## CLASS ACTION ALLEGATIONS

94.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of the following class (the "Class"):

> All persons in Massachusetts who, from September 11, 2010, until the date of notice, purchased almond milk products manufactured, distributed and/or sold by Blue Diamond Growers containing the label statement 'All Natural' (the "Class").

95.     Plaintiff seeks to represent the members of the Class who purchased misbranded Blue Diamond almond milk products in Massachusetts.

96.     The following persons are expressly excluded from the Class: (1) Defendant and its subsidiaries and affiliates; (2) all persons who make a timely election to be excluded from the proposed Class; (3) governmental entities; and (4) the Court to which this case is assigned and its staff.

97.     This action can be maintained as a class action, because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

98.     **Numerosity**: Based upon Defendant's publicly available sales data with respect to Blue Diamond almond milk products, it is estimated that the number of Class members is in the millions. Joinder of all Class members is impracticable.

99.     **Common Questions Predominate**: This action involves common questions of law and fact applicable to each Class member that predominate over questions that affect only individual Class members. Thus, proof of a common set of facts will establish the right of each Class member to recover. Questions of law and fact common to each Class member include, for example:

a.      Whether Defendant engaged in unfair, unlawful, or deceptive business practices by failing to properly package and label Blue Diamond almond milk products sold to consumers;

b.      Whether Defendant unlawfully sold misbranded food products in violation of the FDCA and the food labeling laws of Massachusetts;

c.      Whether Defendant violated Massachusetts ALM GL ch. 93 *et seq.*;

d.      Whether Defendant breached express or implied warranties;

e.      Whether Plaintiff and the Class are entitled to equitable and/or injunctive relief;

f.      Whether Defendant's unlawful, unfair, and deceptive practices harmed Plaintiff and the Class; and

g.      Whether Defendant was unjustly enriched by its deceptive practices.

100.    **Typicality**: Plaintiff's claims are typical of the claims of the Class because Plaintiff bought Defendant's Purchased Products during the Class Period. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. The injuries of each member of the Class were caused directly by Defendant's wrongful conduct.

101.   **Adequacy**: Plaintiff will fairly and adequately protect the interests of the Class. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or are antagonistic to the interests of the Class members. Plaintiff has retained highly competent and experienced class action attorneys to represent Plaintiff's interests and those of the members of the Class. Plaintiff and Plaintiff's counsel have the necessary resources to adequately and vigorously litigate this class action, and Plaintiff and Plaintiff's counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

102.   **Superiority**: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the Class will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class members' rights and the disposition of their interests through actions to which they are not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would create.

103.   The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate injunctive or equitable relief with respect to the Class as a whole.

104.   The prerequisites to maintaining a class action pursuant to Fed. R. Civ. P. 23(b)(3) are met as questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

105.   Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

106.    There are no unique defenses which may be asserted against Plaintiff individually, as distinguished from the Class. The claims of Plaintiff are the same as those of the Class.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**(Violation of Massachusetts ALM GL ch. 93A *et seq*.)**

107.    Plaintiff repeats and realleges each of the above allegations as if fully herein.

108.    Defendant's conduct constitutes unfair methods of competition and unfair and deceptive acts and practices in the conduct of a trade or commerce. Defendant's conduct was consumer-oriented and this conduct had a broad impact on consumers at large. Defendant engaged in false, misleading, and unlawful advertising, marketing, and labeling of Blue Diamond products. Defendant's manufacturing, distribution, and sale of Blue Diamond products were similarly unlawful.

109.    Defendant unlawfully sold Blue Diamond products in Massachusetts during the past four years.

110.    By advertising, marketing, distributing, and selling mislabeled and misbranded Blue Diamond products to Plaintiff and other members of the Class who purchased Blue Diamond products in Massachusetts, Defendant engaged in, and continues to engage in, unlawful and deceptive acts and practices. Defendant's misleading marketing, advertising, packaging, and labeling of Blue Diamond products were likely to deceive reasonable consumers.

111.    Plaintiff and other members of the Class who purchased Blue Diamond products in Massachusetts were deceived.

112.    Defendant has engaged in unlawful and deceptive business acts and practices.

113.    Plaintiff and other members of the Class who purchased Blue Diamond products in Massachusetts were injured by Defendant's unlawful and deceptive acts and practices. Plaintiff and other members of the Class who purchased Blue Diamond products in Massachusetts were injured by Defendant's use or employment of methods, acts, and practices declared to be unlawful by section two of Massachusetts ALM GL ch. 93A and any rule or regulation issued thereunder. Defendant's use or employment of such unfair and deceptive acts and practices has caused similar injury to numerous other persons similarly situated who Plaintiff will adequately and fairly represent.

114.    Defendant's fraud and deception caused Plaintiff and other members of the Class to purchase Blue Diamond products that they otherwise would not have purchased had they known the true nature of these products.

115.    Plaintiff and other members of the Class who purchased Blue Diamond products in Massachusetts were injured as a result of Defendant's unlawful and deceptive acts and practices.

116.    Plaintiff and other members of the Class who purchased Blue Diamond products in Massachusetts further seek to enjoin such unlawful and deceptive acts and practices as described above. Each of the Class members who purchased Blue Diamond products in Massachusetts will be irreparably harmed unless the unlawful actions of Defendant are enjoined, in that Defendant will continue to falsely, misleadingly, and unlawfully conceal the artificial flavors contained in Blue Diamond products and to illegally manufacture, distribute and sell this illegally labeled, misbranded product in violation of the food and drug laws that prohibit such actions. Plaintiff and other members of the Class who purchased Blue Diamond products in Massachusetts therefore seek to enjoin the manufacture, distribution, or sale of any mislabeled or misbranded Blue Diamond products in

Massachusetts and further request an order granting them injunctive relief, ordering

appropriate corrective advertising, and appropriate disclosures on the labeling in advertising,

marketing, and promotion of Blue Diamond products in Massachusetts.

117.     Absent such injunctive relief, Defendant will continue to illegally manufacture,

distribute and sell mislabeled and misbranded Blue Diamond products to the detriment of

consumers in the state of Massachusetts.

118.     In violation of the labeling laws of the state of Massachusetts and

Massachusetts ALM GL ch. 93A *et seq.*, Defendant sold to Plaintiff and the members of the

Class who purchased Blue Diamond products in Massachusetts products that were not capable

of being legally sold or resold, and which had no economic value.

119.     Defendant's violation of Massachusetts ALM GL ch. 93A *et seq.* is ongoing.

120.     As a direct and proximate cause of Defendant's violation of Massachusetts

ALM GL ch. 93A *et seq.*, Plaintiff and the members of the Class who purchased Blue

Diamond products in Massachusetts were injured when they paid good money for these illegal

and worthless products. Plaintiff and the members of the Class who purchased Blue Diamond

products in Massachusetts have been damaged in an amount to be determined at trial.

121.     As a result of Defendant's unlawful business practices, Plaintiff and the

members of the Class who purchased Blue Diamond products in Massachusetts, pursuant to

Massachusetts ALM GL ch. 93A *et seq.*, are entitled to an order enjoining such future conduct

and such other orders and judgments which may be necessary to disgorge Defendant's ill-

gotten gains and to restore to Plaintiff and the members of the Class who purchased Blue

Diamond products in Massachusetts any money paid for Blue Diamond products.

122.    In addition, Plaintiff and the members of the Class who purchased Blue Diamond products in Massachusetts are entitled to the greater of their actual damages and the statutory amount of $25.

123.    On September 5, 2014, more than thirty days prior to the filing of this action, a written demand for relief, identifying Plaintiff and the Class and reasonably describing the unfair or deceptive acts or practices relied upon and the injury suffered by Plaintiff and the Class, was mailed and delivered to Defendant. Defendant failed to respond to this demand in any reasonable manner.

124.    Defendant's actions were knowing and willful and its failure to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two of Massachusetts ALM GL ch. 93A.

125.    Because Defendant's violation of Massachusetts ALM GL ch. 93A *et seq.* was knowing and willful and Defendant's failure to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two of Massachusetts ALM GL ch. 93A, Plaintiff and the members of the Class who purchased Blue Diamond products in Massachusetts are entitled to recover not less than twice and not more than three times their actual damages and any applicable statutory penalties.

126.    Plaintiff and the members of the Class are also entitled to attorneys' fees.

### SECOND CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

127.    Plaintiff repeats and re-alleges each of the above allegations as if fully set forth herein.

128.    Under Massachusetts law, goods to be merchantable must at least:
(a) pass without objection in the trade under the contract description;
(b) in the case of fungible goods, be of fair average quality within the description;
(c) be fit for the ordinary purposes for which such goods are used; and

(d) run, within the variations permitted by the agreement, of even kind, quality, and quantity within each unit and among all units involved;

(e) be adequately contained, packaged, and labeled as the agreement may require; and

(f) conform to the promises or affirmations of fact made on the container or label, if any.

ALM GL ch. 106, § 2-314.

129.   The Defendant's misbranded food products violated the implied warranty of merchantability, because, as misbranded goods unlawfully labeled in violation of state and federal regulations, they were contraband and thus incapable of complying with ALM GL ch. 106, § 2-314(a)-(e). In addition, the Defendant's misbranded food products failed to conform to the promises or affirmations of fact made on the container or label of these products and thus breached the implied warranty of merchantability. Specifically, the products contained false "all natural" labeling statements on the labels.

130.   Implied in the purchase of Blue Diamond by Plaintiff and the Class is the warranty that the purchased products are legal and can be lawfully sold or resold and are not contraband.

131.   Implied in the purchase of Blue Diamond by Plaintiff and the Class is the warranty that the purchased products are properly labeled and packaged.

132.   Defendant knowingly and intentionally misbranded Blue Diamond products.

133.   Misbranded food products are contraband.

134.   Defendant knew its misbranded Blue Diamond products were illegal.

135.   Plaintiff would not have knowingly purchased products that were illegal, misbranded, contraband or unsellable.

136.   Plaintiff would not have knowingly purchased products that were illegal to sell or resell.

137.   No reasonable consumer would knowingly purchase products that are illegal, misbranded, contraband, or unsellable.

138.   No reasonable consumer would purchase products that cannot be legally sold or resold.

139.    The purchased Blue Diamond products were unfit for the ordinary purpose for which Plaintiff and the Class purchased them.

140.    As misbranded products that could not be legally sold or resold, the Blue Diamond products were not merchantable.

141.    As a result, Plaintiff and the Class were injured through their purchase of unsuitable, useless, illegal, misbranded, and unsellable products.

142.    Plaintiff would not have purchased misbranded Blue Diamond products if Plaintiff knew the products breached the implied warranty of merchantability by failing to conform to the promises and affirmations of fact made on the container or label of these products.

143.    By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for misbranded Blue Diamond products, together with punitive damages.

**THIRD CAUSE OF ACTION**
**(Breach of Express Warranty)**

144.    Plaintiff repeats and re-alleges each of the above allegations as if fully set forth herein.

145.    Plaintiff and the Class were the intended targets of Defendant's misrepresentations.

146.    Plaintiff and the Class reasonably relied on Defendant's misrepresentations.

147.    Defendant's affirmations of fact and promises relating to its Blue Diamond products created express written warranties that the products would conform to Defendant's affirmations of fact and/or promises.

148.    Alternatively, Defendant's descriptions of its Blue Diamond products became part of the bases of the bargains, creating express written warranties that the products purchased by Plaintiff and the other Class members would conform to Defendant's descriptions and specifications.

149.    In fact, the Blue Diamond products purchased by Plaintiff did not so conform to

the descriptions and specifications.

150.    Defendant expressly warrants on the labels of Blue Diamond products that they are "all natural."

151.    Blue Diamond products are not "all natural" and, in fact, contain artificial ingredients and synthetic additives.

152.    Plaintiff and members of the Class relied on the defendant's false labeling representation that Blue Diamond products are "all natural."

153.    Defendant has breached its express warranty.

154.    As a result of the foregoing, Plaintiff and the other Class members have suffered damages in that the value of the products they purchased was less than warranted by Defendant.

155.    Plaintiff and the Class were injured as a result of Defendant's breach of its express warranties about Blue Diamond almond milk products.

156.    By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Blue Diamond products, together with punitive damages.

## FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)

157.    Plaintiff repeats and re-alleges each of the above allegations as if fully set forth herein.

158.    Defendant had a duty to disclose the presence of artificial ingredients, synthetic additives in Blue Diamond almond milk products.

159.    In making misrepresentations of fact and omissions of material fact to Plaintiff and the other Class members about its Blue Diamond products, Defendant failed to fulfill its duty to disclose the material facts alleged above. Defendant's carelessness and negligence directly and proximately caused its failure to disclose.

160.    Plaintiff and the other Class members reasonably relied upon such representations and omissions to their detriment.

161.    By reason of the foregoing, Plaintiff and the other Class members have suffered damages in an amount to be proved at trial, together with punitive damages.

### FIFTH CAUSE OF ACTION
### <u>(Unjust Enrichment)</u>

162.    Plaintiff repeats and re-alleges each of the above allegations as if fully set forth herein.

163.    As a result of Defendant's unlawful and deceptive actions described above, Defendant was enriched at the expense of Plaintiff and the Class through the payment of the purchase price for Blue Diamond almond milk products.

164.    Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that they received from the Plaintiff and the Class.

165.    By reason of the foregoing, Plaintiff and the Class were damaged in the amount they paid for Blue Diamond products, together with punitive damages.

### SIXTH CAUSE OF ACTION
### <u>(Money Had and Received)</u>

166.    The manufacture, delivery, offer to delivery or sale of a misbranded food product is an illegal act in Massachusetts. Such practices are expressly prohibited by Massachusetts law.

167.    The sale of a misbranded product violates the public policy of Massachusetts.

168.    The misbranded Blue Diamond products purchased by Plaintiff and the Class were illegal and worthless as a matter of law.

169.    Plaintiff and members of the Class were unaware that the Blue Diamond products they purchased were misbranded, illegal, and worthless.

170.    Defendant received the money from Plaintiff and the Class used to purchase Blue Diamond products.

171.    Defendant benefitted from receipt of this money.

172.    Under principles of equity and good conscience, Defendant should not be permitted to keep this money.

173.    Plaintiff and the members of the Class are thus entitled to recovery of the funds they expended to purchase the Defendant's misbranded Blue Diamond products, together with punitive damages.

**SEVENTH CAUSE OF ACTION**
**(Declaratory Judgment That Defendant Violated Federal and State Laws Regarding Mislabeled and Misbranded Food Products)**

174.    Plaintiff repeats and re-alleges each of the above allegations as if fully set forth herein.

175.    The manufacture, sale, delivery, or offer to deliver of a misbranded food product is an illegal act in Massachusetts. Such practices are expressly prohibited by federal and Massachusetts law.

176.    The manufacture, sale, delivery, or offer to deliver of a misbranded product violates the public policy of Massachusetts.

177.    The sale of a misbranded product in Massachusetts constitutes an illegal contract and is void under federal law and the laws of Massachusetts.

178.    Plaintiff and other members of the Class who purchased Blue Diamond almond milk products in Massachusetts further seek to enjoin such unlawful deceptive and unconscionable trade practices as described above. Each of the Class members who purchased Blue Diamond almond milk products in Massachusetts will be irreparably harmed unless the unlawful actions of the Defendant are enjoined in that Defendant will continue to falsely and misleadingly and unlawfully conceal the artificial ingredients and synthetic additives contained in misbranded Blue Diamond almond milk products and to illegally manufacture, distribute and sell these illegally labeled, misbranded products in violation of the food and drug laws that prohibit such actions.

179.    A case or controversy exists among Plaintiff, the Class and Defendant as to applicability of the federal and state laws as to each Defendant.

180.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered and will continue to suffer damages.

181.    Plaintiff, on behalf of himself and the Class, request a declaration of rights and duties with respect to all Defendant including a declaration that the Defendant Blue Diamond products are illegally labeled and misbranded, and an Order enjoining Defendant from continuing to market, advertise, distribute, and sell Blue Diamond almond products in the unlawful manner described herein; and ordering Defendant to engage in corrective action.

182.    Absent such injunctive relief, Defendant will continue to illegally manufacture, distribute and sell mislabeled and misbranded Blue Diamond almond products to the detriment of consumers in the state of Massachusetts.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of Plaintiff's claims.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually, and on behalf of all other similarly situated persons, prays for judgment against Defendant as follows:

A.    For an order certifying this case as a class action and appointing Plaintiff and Plaintiff's counsel to represent the Class;

B.    For an order awarding, as appropriate, damages, restitution, and/or disgorgement to Plaintiff and the Class including all monetary relief to which Plaintiff and the Class are entitled pursuant to under Massachusetts law, including Massachusetts ALM GL ch. 93A *et seq*. Plaintiff and the Class expressly seek the minimum statutory penalties provided for as a result Defendant's violation of Massachusetts ALM GL ch. 93A *et seq*. and the augmented damages they are entitled to as a result of the Defendant's willful, knowing and bad faith acts, pursuant to

the doubling and trebling and other damage augmentation provisions of Massachusetts ALM GL ch. 93A *et seq.*

C.      For an order requiring Defendant to immediately cease and desist from selling Blue Diamond almond milk products in violation of law; enjoining Defendant from continuing to manufacture, deliver, offer to deliver, market, advertise, distribute, and sell Blue Diamond almond milk products in the unlawful manner described herein; and ordering Defendant to engage in corrective action;

D.      For all equitable remedies available pursuant to Massachusetts ALM GL ch. 93A *et seq.* and as a result of the fact that the sale of a misbranded product is an illegal contract that is void under Massachusetts law.

E.      For an order awarding attorneys' fees and costs;

F.      For an order awarding punitive damages;

G.      For an order awarding pre-judgment and post-judgment interest; and

H.      For an order providing such further relief as this Court deems just and proper.

Dated: Boston, Massachusetts
May 16, 2016

MIRABELLA LAW, LLC

By:    /s/Erica Mirabella

Erica C. Mirabella
MIRABELLA LAW, LLC
132 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: 617-580-8270
Facsimile: 617-583-1905
erica@mirabellaLLC.com

Charles J. LaDuca
CUNEO GILBERT & LADUCA, LLP
8120 Woodmont Avenue, Suite 810
Bethesda, MD 20814

Telephone: 202-789-3960
Facsimile: 202-589-1813
charles@cuneolaw.com

Benjamin D. Elga
CUNEO GILBERT & LADUCA, LLP
16 Court Street, Suite 1012
Brooklyn, NY 11241
Telephone: 202-789-3960
Facsimile: 202-589-1813
belga@cuneolaw.com

Dewitt M. Lovelace
Valerie Lauro Nettles
LOVELACE & ASSOCIATES, P.A.
12870 U.S. Hwy 98 West, Suite 200
Miramar Beach, FL 32550
Telephone: (850) 837-6020
Fax: (850) 837-4093
dml@lovelacelaw.com

Chant Yedalian
CHANT & COMPANY
A Profession Law Corporation
1010 N. Central Ave.
Glendale, CA 91202
Telephone: (877) 574-7100
Facsimile: (877) 574-9411
chant@chant.mobi

*Counsel for Plaintiff*